NUMBER 13-07-165-CV


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


IN RE: JUAN ANGEL GUERRA, DISTRICT AND COUNTY 


ATTORNEY FOR WILLACY COUNTY, STATE OF TEXAS
 

 


On Petition for Writ of Mandamus


 


O P I N I O N



Before Justices Yañez, Benavides, and Vela


Opinion by Justice Yañez


 

 This is an original application for writ of mandamus by which the District Attorney
of Willacy County, as relator, seeks to have an order entered by respondent trial judge set
aside. Relator, Juan Angel Guerra, alleges respondent, Judge Migdalia Lopez of the 197th
District Court of Cameron County, exceeded her authority as a magistrate by entering an
order appointing Gustavo Garza as attorney pro tem. The parties have filed motions for
contempt and sanctions. We conditionally grant the writ and deny the motions for
contempt and sanctions.

I. Background

 On January 11, 2007, the 197th Judicial District Grand Jury for Willacy County, July
Term, asked to meet with respondent, Judge Lopez. (1) In that private meeting, the grand
jury expressed concerns that relator had abused his office in several respects and
requested that an attorney pro tem be appointed to assist in the grand jury's investigation
of those concerns. In response to that request, respondent issued an order on January
17, appointing Gustavo Garza as attorney pro tem. Respondent had previously appointed
Garza as attorney pro tem on August 2, 2006, after respondent approved relator's request
to be recused in the investigation of State of Texas v. Eliseo Barnhart and State of Texas
v. Andrea Espinosa, two cases pending in the Willacy County District Attorney's Office. 
The January 17 order, which was drafted by Garza after reviewing the reporter's record of
the meeting between the grand jury and respondent, provides as follows:

 On January 11, 2007, in Willacy County, Texas, the Grand Jury for the
197th District Court, whose term was extended met in open court with District
Judge Migdalia Lopez. On the record the Willacy County Grand Jury
addressed various concerns regarding the District Attorney, Juan Angel
Guerra and his conduct as District Attorney.


I.


 The Grand Jury expressed concern that the District Attorney, Juan A.
Guerra was abusing his office and abusing his power.

II.


 The Grand Jury was concerned with the request by the District
Attorney to investigate and indict several Willacy County elected officials.

III.


 The District Attorney requested the Grand Jury to subpoena the
District Judge.

IV.


 District Attorney, Juan A. Guerra requested indictments from this
Grand Jury without presenting any evidence.

V.


 The District Attorney ordered the Grand Jury to create a five member
committee and the District Attorney named two of the committee members. 
This Grand Jury committee was to investigate and recommend indictment for
neglect of office against the District Clerk, County Clerk, County Sheriff and
other bail bond board members. This matter was a civil matter.

VI.


 The District Attorney demanded $10,000.00 from a bail bond
company. The Grand Jury suspected that a person was indicted for a sex
offense in retaliation for nonpayment of the $10,000.00 demanded.

VII.


 The District Attorney requested the Grand Jury to 'true bill' a case that
the Grand Jury was in favor of a 'no bill' by stating that the suspect was going
to be arrested anyway.

VIII.


 The Grand Jury expressed concern that the District Attorney, Juan
Angel Guerra uses the grand jury process to intimidate individuals or get
even.

IX.


 The Grand Jury was aware of voter fraud committed by the District
Attorney, Juan Angel Guerra during the election of March 2004.


 Because of these concerns, the Grand Jury requested the 197th
District Court meet with the Grand Jury and requested that a special
prosecutor be appointed to assist and guide the Grand Jury in investigating
the aforementioned areas of concern and any other wrong doing involving
the Willacy County District Attorney, Juan Angel Guerra.


Order



 Pursuant to the request by the Willacy County Grand Jury, on this the
11th day of January, 2007, IT IS THE ORDER OF THE COURT that Gustavo
Garza is appointed attorney Pro Tem otherwise known as Special Prosecutor
to investigate and prosecute these matters referenced above and any other
criminal activity connected or arising out of these allegations; the Attorney
Pro Tem will be able to obtain assistance of co-counsel. Considering the fact
that the Court has appointed Gustavo Ch. Garza as attorney pro tem on
August 2, 2006, this Court by this Order is extending the assignment of
August 2, 2006, and the Oath of Office filed with the County Clerk shall
continue in full force and effect until the completion of these matters.


 On February 10, Daniel Cavazos, Jr., a special investigator with the Raymondville
Police Department, alleged in an affidavit that he had probable cause to believe that relator
had committed certain criminal acts. In his affidavit, Cavazos requested a search warrant
to investigate those acts. Garza then presented the affidavit to Judge Janet L. Leal of the
103rd District Court of Cameron County, whereupon Judge Leal issued the warrant,
authorizing the search and seizure of various items within the Willacy County District
Attorney's Office. (2)

 On February 11, Cavazos drafted an "affidavit for warrant of arrest" under Garza's
supervision, which led to the issuance of three arrest warrants against relator. The
warrants accused relator of two counts of theft by public servant and one count of
attempted theft by public servant. (3) Later that day, police officers with the Raymondville
Police Department, acting under Garza's direction, executed a search of the district
attorney's office and seized a number of items. Relator was also arrested in the process
for interfering with the search. On February 23, the complaints against relator--three
felony counts of theft by public servant and the later added charge of interfering with public
duties--were dismissed by Raymondville Municipal Judge Hector Huerta.

 On March 14, relator filed with this Court a "Petition for Writ of Injunction (Temporary
Restraining Order)" (4) and "Motion for Stay of Execution of Order" of the 197th District Court. 
This Court granted relator's stay motion on March 15, (5) ordering the trial court's order of
January 17 stayed and setting the matter for oral argument on April 4.

 On March 21, the aforementioned grand jury met and issued a subpoena directed
to Garza; the subpoena requested the draft indictments against relator that Garza had
previously prepared. Garza provided the grand jury with those indictments and the grand
jury issued the indictments that same day. As a result, relator was once again arrested. (6)

 On March 22, relator filed a motion for contempt, contending that respondent and
Garza had violated this Court's stay order. Respondent and Garza individually filed a
motion to dismiss relator's motion for contempt, and subject thereto, a response and
counter-motion for sanctions. Accordingly, this Court issued an order setting the motion
for an evidentiary hearing. Respondent and Garza were ordered to appear before this
Court on April 4 to respond to relator's motion and show cause why they should not be held
in contempt of court and punished for their alleged failure to comply with this Court's March
15 order. (7)

 On March 31, while a decision on relator's petition was pending before this Court,
relator's motion to recuse respondent in the pending criminal matters against relator was
granted by Judge J. Manuel Bañales, the presiding judge of the Fifth Administrative
Judicial Region. In connection with that recusal, Judge Bañales appointed himself to
preside over this matter. (8) Two days prior to this, relator filed an amended petition asking
that this Court (1) command respondent (who, pursuant to Judge Bañales's order is no
longer the presiding judge) to vacate her January 17 order, and (2) remove Garza as
attorney pro tem.

II. The Issues

 In his petition, relator asserts the following six issues: (9) (1) this Court has jurisdiction
to grant relator's writ of mandamus; (2) the trial court abused its discretion by not initially
seeking to have relator temporarily removed from office through the procedures prescribed
in chapter 87 of the Texas Local Government Code; (3) the trial court abused its discretion
by appointing an attorney pro tem without relator's consent; (4) the trial court abused its
discretion by failing to provide relator with notice and a hearing prior to the appointment;
(5) the trial court abused its discretion by taking an act that caused the district attorney's
office to cease all operations; and (6) the trial court abused its discretion by appointing an
individual who was not a "competent attorney" because of, inter alia, bias and conflicts of
interest.

 In response, respondent contends that (1) relator has adequate remedies at law,
(2) she acted within her legal capacity in appointing an attorney pro tem, and (3) she has
taken no action which has caused the district attorney's office to cease all operations.

III. Mootness and Abatement

 Before discussing the merits of relator's issues on appeal, we must comment on
whether this case has become moot or should be abated.

 A case is determined to be "moot" if the issues presented in the case are no longer
"live" or if the parties lack a legally cognizable interest in the outcome. (10) An entire appeal
does not become moot, however, simply because one issue in the case becomes moot. (11) 
If a case becomes moot on appeal, the appellate court must set aside all previous orders
and judgments; both the appeal and the underlying cause must be dismissed. (12)

 The January 17 order appointed Garza to "investigate" matters concerning relator,
which gave way to Garza's involvement with the July Term grand jury. While relator's
appeal was pending, the grand jury's term expired; as a result, this portion of the order has
been rendered moot. The order, however, also appointed Garza to "prosecute" certain
matters--matters for which relator has been indicted. This issue is still alive. Accordingly,
relator's original proceeding is not moot.

 As to the matter of abatement, this Court has considered whether, in light of
respondent's recusal and the subsequent appointment of Judge Bañales, this proceeding
should be abated pursuant to rule of appellate procedure 7.2(b). (13) Rule 7.2(b) states:

 If the case is an original proceeding under Rule 52, the court must abate the
proceeding to allow the successor to reconsider the original party's decision. 
In all other cases, the suit will not abate, and the successor will be bound by
the appellate court's judgment or order as if the successor were the original
party. (14)


A "successor" in the context of rule 7.2, however, is an individual who succeeds a public
officer who has ceased to hold office. (15) In the instant case, respondent has not ceased to
hold office; she has simply been recused from this proceeding. Additionally, we have
found no case law applying rule 7.2(b) in response to a recusal that occurred pending an
original proceeding or appeal. Because we are not persuaded that the rule is applicable
to this proceeding, we decline to abate. 

IV. Issue One: Jurisdiction

 Mandamus issues only to correct a clear abuse of discretion or a violation of a duty
imposed by law when there is no other adequate remedy. (16) If the trial court's order is one
within its discretionary powers, the relator must show that it is a "clear abuse of
discretion." (17) A trial court clearly abuses its discretion if it reaches a decision so arbitrary
and unreasonable as to amount to a clear and prejudicial error. (18) With respect to
resolution of factual issues or matters committed to the trial court's discretion, for example,
the reviewing court may not substitute its judgment for that of the trial court. (19) The relator
must establish that the trial court could reasonably have reached only one decision. (20) Even
if the reviewing court would have decided the issue differently, it cannot disturb the trial
court's decision unless it is shown to be arbitrary and unreasonable. (21)

 On the other hand, review of a trial court's determination of the legal principles
controlling its ruling is much less deferential. (22) A trial court has no "discretion" in
determining what the law is or applying the law to the facts. (23) Thus, a clear failure by the
trial court to analyze or apply the law correctly will constitute an abuse of discretion, and
may result in appellate reversal by extraordinary writ. (24) Even when a trial court is
confronted with an issue of first impression in Texas, the court still has no "discretion" in
determining what the law is or applying the law to the facts. (25) "Consequently, the trial
court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of
discretion." (26)

 A writ will not issue to correct a trial court's abuse of discretion if relator fails to
demonstrate that he has no adequate remedy by appeal. (27) Mandamus is intended to be
an extraordinary remedy, available only in limited circumstances. (28) The writ will issue only
in situations involving manifest and urgent necessity and not for grievances that may be
addressed by other remedies. (29) "The requirement that persons seeking mandamus relief
establish the lack of an adequate appellate remedy is a 'fundamental tenet' of mandamus
practice." (30) An appellate remedy is not inadequate merely because it may involve more
expense or delay than obtaining mandamus relief. (31)

 In her response to relator's petition, respondent contends that relator has adequate
remedies "afforded to him through the criminal justice system" for the purpose of
responding "to the appointment and any other issues that relate to that appointment." 
Respondent explains that "[s]ince the filing of these original proceedings, Relator has been
indicted by a Willacy County Grand Jury. Therefore, Relator can avail himself of the
criminal justice system as any accused can and address his concerns in that forum." We
agree with respondent's contention to a limited extent.

 What makes this case particularly tricky is that relator comes before us wearing two
different hats: the hat of a district attorney and the hat of a criminal defendant. Each hat
affords relator the ability to air certain grievances--grievances that, at times, can only be
properly raised under the auspices of one of the hats. The challenge before this Court is
to identify which hat relator is wearing when he raises a specific argument. If we come
across an argument that can only be raised under the hat of a criminal defendant, then it
is incumbent upon this Court to dismiss that argument because all appropriate remedies
can be obtained through the criminal justice system at this time.

 It is equally incumbent upon this Court, however, to address and provide appropriate
relief when relator raises grievances while wearing the hat of a district attorney. At the time
relator filed his original petition with this Court, there were no outstanding indictments
against him. Relator was solely before us in his capacity as District Attorney of Willacy
County--an elected official whose office is "constitutionally created and therefore
constitutionally protected." (32) Relator has raised some complaints on appeal that are not
characteristic of the typical criminal defendant; rather, these complaints are those of an
elected official who contends that his statutorily provided powers have been unlawfully
usurped by respondent's appointment of an attorney pro tem. (33)

 Guided by this framework, we find that relator does not have an adequate remedy
by appeal. (34) Accordingly, we must now assess relator's remaining issues to determine
whether respondent's January 17 order constitutes a clear abuse of discretion, thus
entitling relator to mandamus relief.

V. Issue Two: Chapter 87 of the Texas Local Government Code

1. Removal Proceedings under Chapter 87

 According to the Texas Constitution, "The Legislature shall provide by law for the
trial and removal from office of all officers of this State, the modes for which have not been
provided in this Constitution." (35) County officers are subject to this constitutional provision. (36) 
Accordingly, the Legislature has enacted the rules governing the trial and removal of a
district attorney. (37) These rules are promulgated in chapter 87 of the Texas Local
Government Code.

 Under chapter 87, a district judge may remove a county officer (e.g., a district
attorney) from office for incompetency, official misconduct, or intoxication. (38) A removal
proceeding begins by filing a written petition in a district court of (1) the county in which the
officer resides, or (2) the county where the alleged cause of removal occurred, if that
county is in the officer's judicial district. (39) This petition may be filed by any resident of this
state who has lived for at least six months in the county in which the petition is to be filed
and who is not currently under indictment in the county. (40) The petition must (1) be
addressed to the district judge of the court in which it is filed, (2) set forth the grounds
alleged for the removal of the officer in plain and intelligible language, and (3) cite the time
and place of the occurrence of each act alleged as a ground for removal with as much
certainty as the nature of the case permits. (41)

 After a petition for removal is filed, the person filing the petition must apply to the
district judge in writing for an order requiring that the officer be served with citation and the
petition. (42) If the judge refuses to issue the order for citation, the petition will be dismissed,
and no appeal or writ of error can be taken from the judge's decision. (43) If the judge grants
the order for citation, the clerk will then issue the citation with a certified copy of the
petition. (44) The citation will order the officer to appear and answer the petition. (45) After the
issuance of the order requiring citation of the officer, the district judge may temporarily
suspend the officer and may appoint another person to perform his duties. (46)

 An officer may be removed only following a trial by jury. (47) In a proceeding to remove
the district attorney from office, the county attorney from an adjoining county, as selected
by the commissioners court of the county in which the proceeding is pending, shall
represent the State. (48)

2. Relator's Claim

 Relator asserts that when the grand jury initially notified respondent of its desire to
criminally investigate relator, respondent had the option to direct the grand jurors to file a
petition in a manner prescribed by chapter 87, instead of immediately appointing an
attorney pro tem. If a grand juror had filed the appropriate petition, respondent could have
granted the order for citation, thus allowing respondent to temporarily suspend relator and
appoint an attorney pro tem in his place for the purpose of assuming all of relator's official
duties. Relator contends that had respondent acted in this fashion, the Willacy County
District Attorney's Office would not currently be enmeshed in the ongoing power struggle
between relator and Garza. Furthermore, relator argues that respondent clearly abused
her discretion in appointing an attorney pro tem without first suspending or removing relator
from office under chapter 87, because the law allegedly requires that relator be removed
or suspended from office prior to being indicted.

3. Discussion

 We begin by recognizing that nothing on the face of the January 17 order indicates
that respondent is attempting to formally remove relator from office. Though the order may
pave the way for relator's future removal, (49) the order itself simply appoints Garza as
attorney pro tem for the purpose of investigating and prosecuting relator for alleged
criminal activity. (50)

 With regard to relator's claim that he must be removed from office prior to
indictment, we find that chapter 87 clearly shows otherwise. Section 87.031 of the local
government code states: "The conviction of a county officer by a petit jury for any felony
or for a misdemeanor involving official misconduct operates as an immediate removal from
office of that officer." (51) This section reveals that conviction can precede, or occur
simultaneously with, (52) removal. It thus stands to reason that an indictment, which is a
preliminary necessity for pursuing a conviction, can and logically, would also precede
removal. Furthermore, the Texas Supreme Court has held that a county "officer may be
prosecuted criminally . . . either before or after the removal proceedings." (53)

 The code of criminal procedure clearly reflects the idea that a grand jury needs, and
under the law, has the right to rely on, an "attorney representing the State" (54) (e.g., a district
attorney) who will assist the grand jury in fulfilling its duties. (55) A grand jury that must seek
the advice and assistance of a district attorney who is the subject of the jury's investigation
is a recipe for disaster, because the rules place the district attorney in the best position for
obstructing the investigation. (56) The code of criminal procedure "clearly envisions that both
[the district attorney and grand jury] will work together to resolve particular matters at
issue," (57) and this vision can only be safeguarded, in the sort of situation discussed herein,
through the appointment of an attorney pro tem. We believe the law affords a grand jury
the automatic right to have a district attorney it can work with appropriately, but this right
ceases to become automatic if grand jurors are required to file a petition under chapter 87
for the purpose of acquiring an attorney pro tem's assistance.

 If a grand juror were to file a petition, the district attorney would not automatically
be placed on temporary suspension with an attorney pro tem appointed in his place. The
grand juror's petition would first have to be approved by a district judge, and if the judge
refuses to issue citation pursuant to the petition, the grand juror would have no remedy by
appeal. (58) This would seemingly run afoul of a great deal of case law, because "Texas
courts have long described the grand jury as a separate tribunal, independent of the control
of judges and prosecutors." (59)

 Requiring a grand juror to file a petition would also place an evidentiary burden upon
a grand jury--the likes of which have never been recognized in this state. If a grand juror
is required to file a petition under chapter 87, the juror would have to "set forth the grounds
alleged for the removal of the officer in plain and intelligible language," as well as "cite the
time and place of the occurrence of each act alleged as a ground for removal." (60) Placing
this evidentiary burden on a grand jury that simply wishes to acquire competent legal
assistance is utterly nonsensical, especially because no such burden is ever placed on a
grand jury when it decides to initiate an inquiry. (61) 

 Accordingly, we find that respondent did not commit a clear abuse of discretion by
failing to temporarily suspend relator under chapter 87 prior to appointing an attorney pro
tem.

VI. Issue Three: Appointment of Attorney Pro Tem Without Relator's Consent

1. Relator's Grand Jury Concerns

 In his petition, relator initiates discussion of this issue by asserting that respondent
committed acts that violate various articles under chapter 20 of the code of criminal
procedure. These acts include (1) being present in the grand jury room while the grand
jury is conducting proceedings, (62) (2) addressing the grand jury about a matter before the
grand jury, (63) (3) communicating with the grand jury in a manner that is not statutorily
prescribed, (64) and (4) failing to preserve the secrecy of the grand jury proceedings. (65) 
Relator also asserts that respondent erred by allowing the grand jury to initiate a criminal
investigation against him during the extended portion of its term. (66)

 We believe that relator has the capacity to assert these grievances under both 
hats, because this alleged judicial behavior--even when taken outside the context of this
case--should give both criminal defendants and district attorneys everywhere cause for
concern. Nevertheless, we also believe that these grievances, even if supported by fact
and law, do not relate to the single question relator has presented for our consideration: 
Did respondent commit a clear abuse of discretion by issuing the January 17 order? As
a result, no matter what hat relator wears, his grand jury concerns are not properly before
us, and any relief sought on this basis is denied.

 In denying these claims, however, we note that we have not left relator without
recourse. As a criminal defendant, relator may seek relief through the criminal justice
system, where he could file motions to quash and set aside his indictments. As a district
attorney, relator may seek to remedy his grievances by directing them to either the Texas
State Commission on Judicial Conduct or the Texas Commission for Lawyer Discipline.

2. Distinction Between Attorney Pro Tem and Special Prosecutor

 In returning our focus to the January 17 order, we take time to note the order's
language: "IT IS THE ORDER OF THE COURT that Gustavo Garza is appointed attorney
Pro Tem otherwise known as Special Prosecutor . . . ." Though the order treats the terms
"attorney pro tem" and "special prosecutor" as if they were interchangeable, the terms are
far from synonymous. A "district attorney pro tem" is appointed by the district court, and
after taking the oath of office, assumes the duties of the elected district attorney and, in
effect, replaces the latter in performing germane functions of office for purposes
contemplated by the appointment. (67) On the other hand, a "special prosecutor" is permitted
by the elected district attorney to participate in a particular case to the extent allowed by
the prosecuting attorney, without being required to take the constitutional oath of office. (68) 
Though respondent's order used the terms interchangeably, it is clear that she sought to
appoint an attorney pro tem under article 2.07, and the parties do not contend otherwise. (69)

3. Relator's Claim

 Relator correctly asserts that a judge may only appoint an attorney pro tem when
one of four circumstances exist: (1) there is no attorney for the State; (2) the district
attorney is absent from the county or district; (3) the district attorney is unable to perform
the duties of his office; or (4) the district attorney is disqualified to act in any case or
proceeding. (70) Though the January 17 order does not tell us which circumstance the judge
relied on, the factual nature of this case and the arguments of the parties direct our
attention to the issue of disqualification from a case or proceeding.

 Relator contends that under article 2.07, a district attorney can only be disqualified
when the attorney requests to be disqualified and a court approves that request. Relator
seemingly relies on subsection (b-1) of article 2.07, which states, "An attorney for the state
who is not disqualified to act may request the court to permit him to recuse himself in a
case for good cause and upon approval by the court is disqualified." (71) If relator's
interpretation of subsection (b-1) is correct, the initial language of the subsection--"[a]n
attorney for the state who is not disqualified to act"--is rendered meaningless. This
language clearly envisions the possibility that a district attorney may be disqualified prior
to any request for recusal. With that said, we must now determine the circumstances by
which such a "possibility" is created. 

4. Existing Limitations on Disqualification

 In Eidson v. Edwards, the court of criminal appeals held, "[i]f there is a conflict of
interests on the part of the district attorney or his assistants . . . the responsibility of recusal
lies with them, not with the trial court judge." (72) Though Eidson is of questionable
precedential value, (73) its "holding" was later adopted by the court of criminal appeals in a
majority opinion. (74) To date, there are only two recognized exceptions to this holding. The
first is derived from the court of criminal appeals' plurality opinion in Hill v. Pirtle; (75) the
second comes from article 2.01 of the code of criminal procedure. (76) According to Hill, "A
trial court . . . may disqualify a district attorney or his staff on the basis of a conflict of
interest that . . . rises to the level of a due process violation." (77) Under the code of criminal
procedure, a district attorney is disqualified from representing the State "in cases where
he has been, before his election, employed adversely." (78)

 The nature of the due process concerns raised in Hill are inapplicable to the instant
case, as is the limitation imposed by article 2.01. Nevertheless, it would be inappropriate
to limit ourselves to these exceptions as we are confronted with a case of first impression
in the State of Texas. We have found no Texas case law factually similar to the case at
hand, nor have we found any case law that addresses the legal question now before us: 
Can a judge appoint an attorney pro tem to assist a grand jury in investigating a district
attorney's conduct when the district attorney has not sought recusal?

5. Eidson's Inapplicability

 Though we previously quoted the Eidson "holding," it is worth taking a broader look
at the its contextual language at this time. The Eidson opinion reads,

 There may be instances when a prosecutor must recuse himself from
the prosecution of an individual. If there is a conflict of interests on the part
of the district attorney or his assistants, however, the responsibility of recusal
lies with them, not with the trial court judge. We do not wish to imply that a
defendant would be left without recourse if the prosecution's failure to recuse
itself violated his due process rights. If, for example, a prosecutor who had
previously represented a defendant later personally prosecuted the
defendant in the same matter, the defendant's conviction would violate the
Fourteenth Amendment of the United States Constitution and Article I,
Section 19 of the Texas Constitution. (79)


This language demonstrates the inapplicability of Eidson to the case at hand. First, the
Eidson plurality was focused on instances whereby a prosecutor must decide whether to
recuse himself from the prosecution of an individual; it was not focused on the
circumstances in which a prosecutor must decide whether to recuse himself from the
prosecution of himself. Second, the Eidson plurality identified federal and state
constitutional protections--safeguards that are not as readily available in this case. The
plurality further argued that, "even more importantly," a district attorney's "violation of the
rules will subject his cases to reversal on appeal when his unprofessional conduct results
in a denial of due process to a defendant." (80)

 The safeguards espoused by the Eidson plurality provide no protection at all in the
instant case. The remedy of seeking a reversal on appeal is wholly inapplicable to
circumstances in which a grand jury's investigation may be thwarted or obstructed by the
very individual it is investigating. 

 For these reasons, we conclude that Eidson is inapplicable to the case at hand and,
accordingly, does not control our disposition of the instant case. Absent controlling Texas
case law, we now look to case law in other states for guidance.

6. Outside Treatment

 In Northcutt v. Howard, (81) a Kentucky appeals court dealt with a case similar to the
one before us. In Northcutt, a judge instructed a grand jury to investigate the
commonwealth attorney and other elected officials and promptly appointed an attorney pro
tem to assist this investigation. (82) The commonwealth attorney contested this act, requiring
the judge to seek a declaration of his rights before the appeals court regarding the
appointment. In the course of assessing the propriety of the judge's action, the appeals
court stated:

 There can be no doubt that if the commonwealth attorney was under
indictment he would be disqualified from prosecuting the case against
himself, and the circuit court in such case has the right to appoint a
commonwealth attorney pro tem to conduct the trial of a felony charge
against the commonwealth attorney. This being true, it follows as a matter
of course that when the grand jury is actually investigating such a charge
against the commonwealth attorney, he is thereby automatically disqualified
from assisting the grand jury in such investigation. (83)


 In Commonwealth v. McHale, (84) the Pennsylvania Supreme Court upheld a trial
judge's appointment of a "special district attorney." In McHale, the regular district attorney
had refused to sign and send indictments to a grand jury because he claimed the
indictments contained factual errors. These indictments addressed an allegation of
electoral fraud--fraud that, if true, would have increased the district attorney's vote in an
earlier election. (85) The trial judge provided the district attorney an opportunity to sign the
indictments or to present alternative indictments, but the district attorney failed to do so. 
The judge then appointed an attorney to assist the grand jury. On appeal to the supreme
court, it was argued that the indictments should be quashed because they were not signed
by the district attorney. The court rejected this argument, stating:

 The appointment . . . was eminently proper, as the district attorney was a
candidate at the general election at which the alleged frauds were
committed, and which frauds, it is stated, increased his vote. It would
therefore have been a breach of professional and official propriety for him to
have acted as district attorney in these cases. But it is said the appointment
was illegal because the Constitution adopted since the act of 1866 was
passed, makes the district attorney a constitutional officer, and as such he
cannot be stripped of his powers by the legislature. There is little force in this
suggestion. While the legislature may not abolish the office, it can control
the officer. They can regulate the performance of his duties, and punish him
for misconduct, as in the case of other officers. And where he neglects or
refuses to act, or where, from the circumstances of a given case, it is
improper and indelicate for him to act, it is competent for the legislature to
afford a remedy. (86)


 In Lattimore v. Vernor, (87) a county attorney sought a writ of prohibition after a district
judge appointed an attorney pro tem to assist a grand jury that was investigating whether
the county attorney had committed any criminal acts. (88) The Oklahoma Supreme Court
held:

 A county attorney is disqualified to appear before a grand jury when
said grand jury is investigating the conduct of said county attorney, and the
district court has authority, under section 5745, C.O.S. 1921, to declare the
disqualification of the county attorney, in so far as he is disqualified, and to
appoint a special or substituted county attorney to conduct such inquiry, in
so far as the county attorney is disqualified, subject to a superintending
control by the Supreme Court. (89)


An Oklahoma state statute authorized a district court to appoint an attorney pro tem when
the county attorney was "disqualified to act." (90) The supreme court noted, however, that
even if the statute did not have the "disqualified to act" language, the district court could
have utilized its "inherent power" to make the appointment. (91)

 In addition to the Oklahoma Supreme Court, the assertion that a court has the
inherent power to appoint an attorney pro tem when the county elected attorney is under
grand jury investigation has been embraced by the Arkansas Supreme Court, (92) Ohio
Supreme Court, (93) Colorado Supreme Court, (94) Indiana Supreme Court, (95) and a California
court of appeals. (96)

7. This Court's Holding

 In an opinion authored over 140 years ago, the Texas Supreme Court held:

 It is a part of the duty of the district attorney to prepare judgments under the
direction of the grand jury; but the powers and duties of the grand jury do not
cease because there may happen to be no district attorney. In case of a
vacancy in the office of district attorney, or in case of the district attorney's
temporary disability to act, or in any particular case where there might exist
special reasons why he should not act, any other competent person might
act in the preparation of indictments, by the authorization of the court. (97)


We are currently confronted with a case in which there undoubtedly exist special reasons
why relator should not act and why he is disqualified to act. Accordingly, respondent was
authorized to appoint a competent person to act in relator's place, and we find that this
authorization is explicitly derived from article 2.07 of the code of criminal procedure. (98)

 A judge has the authority, as well as an obligation, to appoint an attorney pro tem
to assist a grand jury that intends to criminally investigate the district attorney. (99) In such
a situation, the district attorney is deemed "disqualified to act" for purposes of article
2.07(a) of the code of criminal procedure, and disqualification need not solely arise from
the attorney's own motion to recuse under subsection (b-1). (100)

 While we find that respondent's appointment of an attorney pro tem was explicitly
authorized by article 2.07, we further find that such appointment was implicitly authorized
by a court's inherent power. In Johnson v. State, (101) the Texas Court of Criminal Appeals
held:

 In addition to specific power to act conferred by constitutional
provision, statute, or common law, all courts have inherent authority to take
certain actions. In Eichelberger v. Eichelberger, 582 S.W.2d 395 (Tex.
1979), our sister court noted that in addition to express grants of power, a
court has inherent judicial power, which it may call upon to aid in the exercise
of its jurisdiction, in the administration of justice, or in the preservation of its
independence and integrity. Courts may also have implied authority to act,
arising from specific grants of power.

 

 In sum, a court may take a particular action only if that action is
authorized by constitutional provision, statute, or common law, or the power
to take the action arises from an inherent or implied power. (102)


Through the appointment of an attorney pro tem, respondent denied relator the opportunity
to participate in the grand jury's investigation into his conduct. In doing so, the
appointment served to preserve the integrity of the court and aid in the administration of
justice. We thus hold that respondent did not commit a clear abuse of discretion by
disqualifying relator without his consent.

8. The Limitations of this Court's Holding

 We must make a few essential observations concerning this Court's holding. We
begin by observing that, from the record before us, it appears that the grand jurors
collectively approached respondent with a desire to investigate relator. The record does
not reflect that respondent disqualified relator upon receiving notice that only one or a few
grand jury members wanted to investigate relator. We also observe that the grand jury
apparently investigated relator on its own initiative; the record does not reflect that
respondent directed or prompted the commencement of the investigation. If the record
regarding these circumstances reflected otherwise, we cannot say that our opinion would
remain the same.

 Lastly, we held that respondent had the authority to disqualify relator because the
grand jury wished to investigate relator for possible criminal conduct (e.g., "voter fraud"). 
When a grand jury wishes to investigate the district attorney for possible criminal
wrongdoing, we have found that a judge is legally authorized to appoint an attorney pro
tem to assist with the investigation because doing so is necessary to ensure that the grand
jury is able to properly perform its duties. An appointment cannot be similarly justified,
however, when the appointment is made to assist a grand jury in investigating a district
attorney for non-criminal matters because the grand jury would be acting outside of its
legally prescribed duties. It is evident under the law of Texas that a grand jury has no
authority to investigate civil matters or to make any investigation into circumstances where
no criminal offense is suspected or alleged. (103) Accordingly, a judge should be inclined to
restrain, rather than assist, a grand jury that is investigating a matter outside the scope of
its authority.

 In the instant case, respondent wrongfully assisted the grand jury in commencing
an investigation into several non-criminal matters by appointing an attorney pro tem to aid
in investigating said matters. These matters related to whether relator requested the grand
jury to (1) investigate civil matters, (2) subpoena the District Judge, (3) investigate and
indict several Willacy County elected officials, (4) present indictments without being shown
supporting evidence, and (5) "true bill" a case even though the grand jury was in favor of
a "no bill." These concerns fail to suggest any intelligible indicia of any criminal offense
that may have been committed. While we find all this to be problematic, we do not believe
that the January 17 order should be deemed voidable as a result. The order did,
nonetheless, evidence the jury's desire to acquire the assistance of an attorney pro tem
to investigate relator for possible criminal wrongdoing--theft, attempted theft, tampering
with records, perjury, abuse of office, and voter fraud-a fact that is essential to this Court's
holding.

VII. Issue Four: Right to Notice and a Hearing

 Relator asserts that even if respondent had the power to disqualify him and to
appoint an attorney pro tem, he should have been afforded notice and a hearing prior to
the appointment. While this is not explicitly required by article 2.07, relator contends the
law implicitly requires that notice and a hearing be afforded when a district attorney has not
elected to voluntarily disqualify himself. Relator states that "[a] finding of disqualification
would require that the Court conduct a hearing, allow for the presentation of evidence of
disqualification, and allow the duly elected District Attorney the opportunity to present
evidence and authorities showing that disqualification was not proper." Relator does not
cite any law to support his assertion, and our own efforts to find law on point has again led
us to look toward case law from other states.

1. Outside Treatment

 Only a handful of courts have addressed the very contention relator asserts herein. 
Among these courts, we find the treatment provided by the West Virginia Supreme Court
to be of great guidance.

a. West Virginia

 In State ex rel. Matko v. Ziegler, (104) the West Virginia Supreme Court addressed a
case that is nearly factually identical to the one now before us. The facts in Matko are as
follows:

 On November 12, 1970, after the grand jury had returned several
indictments, the foreman of the grand jury informed the special judge that
some members of the grand jury desired to investigate other matters, and
one grand juror, in the presence of the [elected prosecutor], stated that the
matters in question related to bribery concerning [the prosecutor]. . . . [T]he
court advised the jury that it could investigate the matters and in the
presence of the grand jury informed [the prosecutor] that he would appoint
a special prosecuting attorney to conduct the investigation as the court was
of the opinion that [the prosecutor] and his assistants were disqualified from
acting in the matters. The court then excused the grand jury until November
18.


 . . . .

 

 The grand jury reconvened on November 18, and on November 23, returned
[an] indictment against [the prosecutor]. Before the adjournment of the
grand jury, [the prosecutor] . . . filed his petition in which he prayed that the
grand jury be discharged and dismissed; . . . that the special prosecuting
attorney be discharged and the order appointing him rescinded; . . . [and]
that, if the grand jury were not discharged, . . . that [the prosecutor] be
permitted to appear before the grand jury and give such testimony as he
might desire. . . . [T]he grand jurors informed the court that they were
unwilling to hear any testimony by [the prosecutor], and . . . the court refused
to grant [the prosecutor's] prayer . . . . (105)


The supreme court first ruled that the judge had authority to make the appointment under
West Virginia Code § 7-7-8, which provided that "if in any case the prosecuting attorney
and his assistant be unable to act, or if in the opinion of the court it would be improper for
him or his assistant to act, the court shall appoint some competent practicing attorney to
act in such case." (106) The court then went on to reject the prosecutor's claim that he should
have been afforded notice and a hearing, stating:

 The statute clearly contemplates summary action by the trial court, in which
a proceeding is pending, and makes no provision for notice to the
prosecuting attorney or for a hearing concerning his disqualification to act in
the particular circumstances. Any provision for notice and hearing would
result in delay and operate to defeat the purpose of the statute. 
Furthermore, notice and hearing are generally unnecessary for, as here,
there is no dispute in the material facts and the court and the prosecuting
attorney were entirely and equally familiar with the situation which
disqualified the petitioner from acting as the prosecuting attorney in
connection with the proceedings relating to his indictment and prosecution. (107)


 The West Virginia Supreme Court revisited Matko eight years later in State ex rel.
Preissler v. Dostert. (108) In Preissler, a judge removed the elected prosecutor from a case
and appointed an attorney to act in his place. (109) The judge never received a formal request
to remove the prosecutor; (110) rather, the judge predicated removal upon his belief that the
prosecutor had made statements about the case that (1) violated the code of professional
responsibility and (2) evidenced an intent not to prosecute. (111) The supreme court,
recognizing that the judge had disqualified the prosecutor without any formal request to do
so, held that the judge "was not empowered to enter the order on his own motion." (112) The
court then proceeded to address the question of whether a judge had the power "to
discharge summarily a publicly elected prosecutor from the performance of his duty." In
addressing this question, the court compared Preissler and Matko, noting the factual
distinctions that led to each elected prosecutor's disqualification:

 We note, however, that Matko involved a proceeding in the circuit court
wherein the elected prosecuting attorney had been indicted by the grand jury
upon a felony charge. The disqualification of the prosecutor to act resulted
from his status as a criminal defendant, obvious on the face of the
indictment. There was no need for a hearing since his status inherently
rendered his prosecution of the case improper. Here, however, the
determination of impropriety to act is not based on the status of the
prosecutor but rather on the issue of the prosecutor's refusal to prosecute. 
Not only does the question require presentation of facts in order to enable
the judge to reach an opinion on the matter, but it also requires a charge that
the prosecutor is avoiding or sidestepping the duties imposed on him by the
Constitution and by his office. In such a situation the circuit court judge
cannot summarily override the Constitutional mandate that the prosecuting
attorney perform the duties of his office without first conducting a full and
proper hearing. Consequently, we would limit the holding in Matko, on this
issue, to the facts in that case, and we would hold that where recusal of a
prosecuting attorney from the prosecution of the criminal case under W. Va.
Code § 7-7-8 is sought on the basis of his failure to perform his official
duties, the circuit court judge cannot summarily recuse the prosecutor but
must afford the opportunity to have a hearing on the matter. . . . (113)


 Preissler thus established that, as a general rule, an elected prosecutor is entitled
to notice and a hearing prior to a judicial determination that he is disqualified to act in a
case or proceeding; meanwhile, Matko's holding--bound by the unique factual situation
from which it was derived--was left as an exception to this rule. Preissler went on to hold
that, before a prosecutor may be disqualified from acting in a particular case, "the reasons
for his disqualification must appear on the record, and where there is any factual question
as to the propriety of the prosecutor acting in the matter, he must be afforded notice and
an opportunity to be heard." (114)

b. Other Courts

 In State ex rel. Ilvedson v. District Court, (115) the North Dakota Supreme Court
confronted a case that was factually similar to Preissler. In Ilvedson, a group of individuals
presented the elected prosecutor with a petition, requesting that he take action against the
county commissioners to recover a debt owed to the county. (116) When the prosecutor failed
to take an action that satisfied the petition's endorsers, they requested the assistance of
the district judge. (117) In response, the judge disqualified the prosecutor from undertaking
any further action against the commissioners, and assigned the responsibility for all future
action to an appointed attorney. (118) The judge derived his appointment authority from a
statute that allowed a judge to appoint an attorney when the prosecutor failed or neglected
to prosecute a case that the judge believed should be prosecuted. (119) Though the statute
did not explicitly afford the prosecutor a right to notice and a hearing prior to a finding of
disqualification, the prosecutor argued he was entitled to as much. The supreme court
agreed with the prosecutor, stating:

 Assuming, without deciding, that the legislature may provide for a partial or
limited removal of the state's attorney--removal in so far as the institution
and prosecution of one particular action is concerned--clearly it may not
authorize such removal except after notice and hearing. Hence, if the
legislature intended to confer upon the district judge power to determine
whether the state's attorney has refused or neglected to perform his duty,
and to order that the state's attorney be deprived of all power and duty as
such in connection with the institution and prosecution of a certain action, all
without notice to the state's attorney, or opportunity to be heard on the
question whether he has refused or neglected to perform his duty, then the
statute is manifestly unconstitutional. But, it will not be presumed that the
legislature had any such intention, unless it has clearly expressed such
intention in the law itself. The presumption is that the legislature intended
that the removal proceeding which it prescribed should be in accordance with
the principle of due process of law. (120)


 In Lattimore v. Vernor (121) and State ex rel. Thomas v. Henderson, (122) the Oklahoma
Supreme Court and the Ohio Supreme Court, respectively, held that an elected prosecutor
was entitled to notice and a hearing prior to being involuntarily disqualified and having an
attorney pro tem subsequently appointed in his place. Both courts so held in response to
a trial judge who had appointed an attorney to assist a grand jury in criminally investigating
the prosecutor. In both cases, the judge, on his own initiative, empaneled the grand jury
and directed the jury to investigate the prosecutor.

c. Contrasting Matko

 Of the five cases just discussed, only Matko held that the elected prosecutor was
not entitled to notice and a hearing prior to his disqualification. While Matko may appear
to be inconsistent with the other cases' holdings, there are two critical facts in Matko that
make its holding distinguishable, thus obviating any conflict with the other cases.

 Matko, like Lattimore and Vernor, involved a prosecutor who was disqualified as a
result of being the subject of a grand jury investigation. Preissler and Ilvedson each
involved a prosecutor who was disqualified for allegedly failing to perform the duties of his
office (i.e., refusing to prosecute a case). (123) The difference between these two grounds for
disqualification, as we previously noted from Preissler, is that the question of whether a
prosecutor should be disqualified for refusing to prosecute requires not only the
"presentation of facts in order to enable the judge to reach an opinion on the matter, but
it also requires a charge that the prosecutor is avoiding or sidestepping the duties imposed
on him by the Constitution and by his office." (124) The question of whether a prosecutor
should be disqualified when he is the subject of a grand jury investigation, on the other
hand, does not necessitate the "presentation of facts . . . to enable the judge to reach an
opinion," nor does it require a finding that the prosecutor is "sidestepping the duties
imposed on him." 

 The reasoning behind this position--as viewed through the law of our state--is that
even if the judge believed that the prosecutor had not committed wrongdoing, the judge's
opinion would have no practical relevance because it does not provide a legally authorized
basis for prohibiting the grand jury from investigating the prosecutor. (125) Additionally, the
presentation of facts relating to whether the prosecutor actually committed wrongdoing is
unnecessary because no evidentiary bar needs to be satisfied in order for a grand jury
investigation to commence. (126) Lastly, as noted in Preissler, there is "no need for a hearing
since [the prosecutor's status as a criminal defendant] inherently renders his prosecution
of the case improper." (127)

 The second key factual distinction in Matko, which is not present in any of the other
cases, is that in Matko:

 [I]t was members of the grand jury who approached the criminal court judge
to request permission to investigate the elected prosecutor. Thus in Matko,
the criminal court judge in no way initiated the proceedings, nor did he aid,
abet, or encourage any activities against the prosecutor that were not forced
upon him by the entreaties of third parties. (128)


In Preissler and Ilvedson, the judge was not forced by the entreaties of third parties to
disqualify the prosecutor. Furthermore, in Lattimore and Thomas, the judge was
responsible for initiating the grand jury investigation against the prosecutor, thus
singlehandedly creating the need and the basis for the prosecutor's disqualification. This
is problematic because, as articulated in Preissler, "[t]o permit a judge to invoke the
jurisdiction of his court sua sponte would place him in a position of a complainant deciding
the merits of his own complaint in violation of the ancient homily of the law that no man
may be a judge in his own case." (129)

2. Right to Notice and a Hearing Under Article 2.07

 We hold that article 2.07 implicitly affords a district attorney the right to notice and
a hearing before he is deemed disqualified to act in any case or proceeding. We further
hold, however, that this right ceases to exist in situations like the one now before us,
where: (1) a grand jury, on its own initiative, sought to investigate the district attorney for
possible criminal wrongdoing; (2) the judge, upon being confronted with the grand jury's
desire to investigate the district attorney, disqualified the district attorney from participating
in the grand jury's investigation; and (3) the judge subsequently appointed an attorney pro
tem to assist the grand jury with its investigation. While our holdings are undeniably
influenced by the out-of-state case law discussed herein, they are primarily predicated
upon our observations of the law in this state.

 While there are various means by which a district attorney may be lawfully restricted
from performing, in whole or in part, the duties of his office, these means typically afford
him with notice and a hearing. For instance, under our state constitution, a district judge
cannot remove the district attorney for incompetency, official misconduct, or other causes
defined by law, without the attorney being found guilty of the charges against him at the
conclusion of a jury hearing. (130) Additionally, in cases where a criminal defendant files a
pretrial motion to disqualify the district attorney from prosecuting a case against him, the
motion may not be granted without the defendant proving at a hearing that there is a
conflict of interest that rises to the level of a due process violation. (131) Even in instances in
which the district attorney wishes to voluntarily recuse himself, article 2.07 demands that
the district attorney seek approval from the judge by showing good cause for his
recusal--a requirement that necessitates some basic level of communication and
interaction between the judge and district attorney prior to disqualification. (132) In light of all
this, our conclusion that article 2.07 implicitly requires notice and a hearing is consistent
with Texas law. (133)

 This Court's decision to not extend the right to notice and a hearing to the instant
case also finds support in the law of this state. The Texas Supreme Court has recognized
that an elected county official is not always entitled to notice and a hearing prior to being
restricted in the performance of his duties. In Griner v. Thomas, Thomas, a district judge,
signed an order temporarily suspending Griner, a county judge, from office. (134) The
temporary suspension was made pending the hearing of a petition for the removal of
Griner from office. On appeal, Griner complained that if Thomas had the power to
temporarily suspend him, he could not have done so without first affording him notice and
a hearing, which were not provided. (135) The supreme court rejected this complaint, stating:

 [I]t is argued that . . . notice and a hearing should be required before a
suspension is made. It is conceded that the statute does not, in terms,
require notice, but it is insisted that it is essential to that due process of law
without which no one may be deprived of his property, and that the
requirement of it should therefore be read into the law.  But such a
requirement would be inconsistent with the terms of the statute, which
prescribes the only notice to be given, that of the final hearing, and
authorizes the suspension at any time after the order therefor has been
made. To hold that notice and a hearing were necessary before suspension
would render the power futile. To the contention that suspension without
notice is a deprivation of property without due process, the answer is that
such property right in an office as the holder has is qualified by all pre-existing valid laws which provide for its suspension or termination, and,
hence, the application of remedies so provided for does not unduly deprive
him of any property. (136)


 The petition for removal in Griner does not appear to operate any differently than
the modern-day petition that is filed in accordance with chapter 87 of the local government
code. Chapter 87 states that pending a county officer's trial, a "district judge may
temporarily suspend the officer and may appoint another person to perform the duties of
the office." (137) While a judge may suspend an officer, he may not do so until (1) "[a]fter the
issuance of the order requiring citation of the officer," (138) and (2) after "the person appointed
to serve executes a bond, with at least two good sufficient sureties, in an amount fixed by
the judge and conditioned as required by the judge." (139) It is conceivable that both of these
requirements can be fulfilled prior to the officer acquiring notice through his receipt of the
citation and petition; therefore, chapter 87 does not appear to guarantee that the officer will
receive notice prior to his suspension. Lastly, chapter 87 clearly does not guarantee the
right to a hearing prior to suspension, for it contains no statute prescribing such a
requirement.

 One final notable aspect of Griner is the supreme court's response to "the
contention that suspension without notice is a deprivation of property without due process." 
The supreme court's answer--"that such property right in an office as the holder has is
qualified by all pre-existing valid laws which provide for its suspension or
termination"--reflects the idea that an individual who accepts public office takes it cum
onere, (140) that is, the individual "assumes the burdens and the obligations of the office as
well as its benefits, subjects himself to all constitutional and legislative provisions relating
to the office, and undertakes to perform all the duties imposed on its occupant." (141)

 There is nothing incredibly novel about this Court's decision that relator was not
entitled to notice and a hearing prior to his disqualification. In light of Griner, we are clearly
not the first court to find that a county officer can be lawfully impeded in the performance
of his official duties without first receiving notice and a hearing. This finding, moreover, is
a present reality with temporary suspensions under chapter 87. Lastly, we note that in
holding that relator was not entitled to notice and a hearing, we have not acted in
opposition to the holdings of any out-of-state cases discussed herein--a point that was
fully developed earlier in this opinion by our discussion distinguishing Matko.

 In the instant case, the grand jury notified respondent of its desire to investigate
relator for possible criminal wrongdoing. Relator contends that, had he been afforded a
hearing, he would have provided respondent with testimony and evidence to show that the
grand jury's concerns were without merit. Even if we assume relator's contention is
correct, it does not change the fact that respondent was nonetheless required to disqualify
relator, given that: (1) relator's status as the subject of the investigation rendered his
involvement in the investigation inherently improper; (2) respondent was not authorized to
prohibit the investigation, even if she felt it was of questionable necessity; (142) (3) the grand
jury was entitled, as expressed earlier in this opinion, to be assisted by an attorney that it
could work with appropriately; and (4) respondent had an obligation to disqualify relator
and appoint an attorney pro tem to secure the integrity of the grand jury system and the
proper administration of justice. Only the grand jury could have terminated the
commencement of its investigation, and whether or not relator is afforded the opportunity
to address the grand jury is a matter that is decided by the jurors, (143) not by him. (144) 
Furthermore, any public benefit that could have derived from relator being afforded a
hearing is negligible in this case, because any such benefit is trumped by the need to
recognize the longstanding reasons for maintaining the secrecy of the grand jury's
proceedings. (145)

3. Conclusion

 This Court holds that a district attorney is entitled to notice and a hearing prior to his
disqualification under article 2.07, but also holds that the nature of relator's disqualification
presents an exception to this general rule. We have interpreted article 2.07 in a manner
we believe the law requires; accordingly, we further believe that relator has no proper basis
for complaining that his right to his office has been unduly impeded by either respondent
or this Court. Relator, after all, accepted the office of district attorney cum onere. His hold
on the office is subject to the laws of this state which allow for his termination, suspension,
and disqualification; the application of such laws evolves through the statutory
interpretations provided by the courts of appeals of this state. Based on the interpretation
of article 2.07 we espouse today, we find that respondent did not commit a clear abuse of
discretion by failing to provide relator notice and a hearing.

VIII. Issue Five: Causing District Attorney's Office to Cease all Operations

 In his final issue, relator asserts that respondent's January 11 order constitutes a
clear abuse of discretion because it has effectively placed the Willacy County District
Attorney's Office in a state of disarray. To support this contention, relator primarily asserts
that, as a result of the order, Garza was able to acquire the warrant that was ultimately
utilized to seize computers and files within the district attorney's office, items which are
essential to the office's continued operation. Relator requests that this Court quash the
search warrant that was issued by Judge Leal, and order the return of the items seized. (146) 
Relator, however, has not equipped this Court with the pleadings, evidentiary record, and
briefing needed to entertain such a request. We thus deny the relief requested.

 With regard to respondent, we do not believe the legality of her order should be
predicated upon the impact the order may directly or indirectly have on the district
attorney's office. The Texas Supreme Court's opinion in Poe v. State (147) largely reflects the
basis for our belief. In Poe, a county sheriff was suspended by a district judge, pending
a hearing on a petition for the sheriff's removal from office. (148) The sheriff was found guilty
at the hearing and subsequently removed from office. (149) The sheriff then contested his
removal on appeal. In addressing the judge's authority to suspend, the court commented:

 The suspension of an officer may be inconvenient and may even
prove to be a great wrong to him. While the suspension is by the terms of
the law only a temporary deprivation of the office, it in every case may be
what it in effect was in this, a permanent deprivation of the office. . . .

 

 . . . The public interests as well as those of the office holder are to be
regarded. The law does not compel the district judges to suspend the
officer, but entrusts them with the discretion to do it, as it in the like manner
trusts their discretion in many other matters equally important. The safety of
the public and every citizen is found in the judicious exercise of that
discretion. (150)

 

 In our case, the law, through article 2.07, afforded respondent the discretion to
disqualify relator. While respondent's decision to disqualify has arguably inconvenienced
the district attorney's office, we presume that her decision was made with the public and
relator's best interests in mind. The law entrusts respondent with the safety of the public
and every citizen, and despite the concerns expressed by relator, we cannot say that
respondent has faltered in upholding this responsibility. Accordingly, we overrule this issue
on appeal. 

IX. Issue Six: Failure to Appoint a Competent and Qualified Attorney

 Relator contends the trial court abused its discretion in appointing an individual who
was not "competent" because he was not independent, unbiased, without conflicts of
interest, was a witness on at least one of the concerns raised by the grand jury, and
because his appointment would violate the incompatibility doctrine. Relator asserts that
the standards for disqualification apply to attorneys pro tem, and further asserts that Garza
was "disqualified" from acting as an attorney pro tem because, inter alia:

 1) Judge Gustavo Garza is Relator's long time political opponent who
has run against Relator on four separate occasions for the post of
Willacy County District Attorney, and as late as the last election for
district attorney in 2004;


 2) There is a tremendous amount of animosity between Relator and
Judge Gustavo Garza such that it has resulted in a physical
altercation between the two on at least one occasion . . . 


 3) Judge Gustavo Garza is the court appointed contract attorney who
has been hired to represent most of the indigent defendants who
have criminal cases pending in said court . . .


 4) Judge Gustavo Garza is a sitting Justice of the Peace and, therefore,
is disqualified from serving as an attorney pro tem (acting district
attorney) due to the constitutional prohibition that no person may
serve in both the judicial and executive offices at the same time,
under the doctrine of incompatibility of public offices . . .


 5) Judge Gustavo Garza is a witness to one of the 'concerns' raised by
the Grand Jury of the 197th District Court . . .[that is,] 'voter fraud
committed by the District Attorney, Juan Angel Guerra during the
election of March 2004,' in that Judge Gustavo Garza was a
candidate for district attorney opposing Relator during that same
election. 


 Relator's arguments focus on (1) Garza's "competence" under article 2.07 of the
code of criminal procedure, and (2) the general standards for disqualification of an
attorney. We apply, in general, an abuse of discretion standard to the trial court's
appointment of an attorney pro tem. (151)

1. "Competent Attorney"

 Article 2.07(a) states that a "judge . . . may appoint any competent attorney to
perform the duties of the office during the absence or disqualification of the attorney for the
state." (152) When the appointment of an attorney pro tem is necessary under article 2.07,
the decision of whom to appoint lies within the discretion of the trial court." (153) The only
limitation imposed by the statute is that the court appoint a "competent attorney" to
serve. (154) The statute, however, does not define that term.

 The Waco Court of Appeals is the only court that has attempted to bring meaning
to the term "competent" within article 2.07(a). (155) In Shea v. State, the Waco court
addressed Shea's claim that the trial court had failed to appoint a "competent attorney"
because the attorney pro tem was serving a federal probation for misprision of a felony. (156) 
The court used Webster's Dictionary to define the term "competent" as meaning "legally
qualified or adequate." (157) The court then overruled appellant's claim, finding that Shea had
presented no evidence that the attorney pro tem's license had been suspended or that he
was not otherwise a "member in good standing" with the State Bar. (158)

 While we take no issue with the treatment given to the term "competent" in Shea,
we do question whether the term actually holds any significant consequence. If, for
example, we were to assume that the term "competent" was not in article 2.07, it is
conceivable that Shea's claim could still be asserted through the term "attorney." For
instance, a state could hardly claim to satisfy an accused's sixth amendment right "to have
the assistance of counsel for his defense" (159) if the state provided the accused with an
attorney that could not legally practice in the court in which the accused was to be tried. 
The state could not justify this action on the basis that the sixth amendment does not
explicitly afford the right to "competent counsel." With that said, the meaning of the term
"attorney" in article 2.07 should not be construed any less significantly.

 This Court does not believe the term "competent attorney" in article 2.07 holds any
more meaningful significance than it does in section 6.30(c) of the Texas Tax Code (160) or
rule 8 of the Texas Rules Governing Bar Admission. (161) The placement of the term
"competent" in article 2.07, at most, serves to advise the court that it should appoint an
attorney that has some knowledge of the law with which he will be dealing. Relator's
factual allegations under this issue do not attack Garza's legal qualifications as an attorney
or his adequacy as an attorney in general, and accordingly, we conclude that Garza is
"competent" to serve as an attorney pro tem under article 2.07. 

2. Disqualification


 Relator's remaining arguments under this issue urge that Garza is disqualified to
serve as attorney pro tem. It is clear that attorneys pro tem are subject to disqualification
in the same manner as district attorneys. (162) A prosecutor is appointed solely to pursue the
public interest, and a private attorney appointed to prosecute should be as disinterested
as a public prosecutor. (163) We will address relator's arguments seriatim.

a. Practicing Criminal Defense Counsel

 Relator asserts that Garza should not be attorney pro tem because he is currently
acting as criminal defense counsel in Willacy County. This matter was somewhat
addressed in an opinion from the Texas Attorney General's Office. (164) The opinion
addressed whether article 2.08 of the code of criminal procedure disqualified a county
attorney pro tem from acting as criminal defense counsel in an adjoining county. Article
2.08 prohibits district and county attorneys from appearing "of counsel adversely to the
State in any case, in any court." (165) The stricture prevents the district and county attorney
from representing a party adverse to the State in any court in the State; representing a
criminal defendant constitutes being "of counsel adversely to the State." (166)

 Confronted with the question of whether article 2.08 also applies to an attorney
appointed as a county or district attorney pro tem, the attorney general's office stated:

 By its plain terms, article 2.08 disqualifies district and county attorneys, i.e.,
constitutional district and county attorneys, from acting as counsel adversely
to the state in any court. Attorneys appointed pro tem to perform the duties
of a county or district attorney are not included. Although the Legislature
could have written article 2.08 to also apply to an attorney appointed pro tem,
it did not do so. We may "add words into a statutory provision only when
necessary to give effect to clear legislative intent." Moreover, we may
consider the consequences of a particular construction and will presume a
feasible result was intended. If an attorney who accepts even one pro tem
appointment for a single case cannot engage in criminal defense in any court
in the state, then article 2.08 would effectively exclude the most qualified
private attorneys--those with an ongoing defense practice--from accepting
any pro tem appointments. Consequently, we conclude that article 2.08
applies to county attorneys under the constitution, but not to attorneys
appointed to perform the duties of the office pro tem. (167)


This reasoning admittedly addresses a different circumstance from the one before us. The
opinion dealt with an individual who did not act as an attorney pro tem and a criminal
defense counsel in the same county. This is a distinction from the case before us--a
distinction that is made more significant by the fact that our attorney pro tem is
investigating a district attorney, and as a result, can potentially take control of sensitive
information that pertains to cases he is working on as a criminal defense counsel. Despite
the distinction, however, we believe the attorney general's reasoning can be adequately
applied to the instant case.

 Article 2.07 states that a judge can appoint "any competent attorney." (168) The statute
contains no wording from which one can derive the interpretation that a judge cannot
appoint a criminal defense counsel who is practicing in the same county. Although the
Legislature could have written appointment restrictions into article 2.07(a), it did not do so. 
Furthermore, while this Court may question, in light of the concerns expressed in the
preceding paragraph, whether it was a good idea to appoint Garza for the purpose of
investigating relator, we cannot say that respondent committed a clear abuse of
discretion. (169)

b. Justice of the Peace

 Relator contends that Garza is legally incompetent to act as attorney pro tem
because he is a justice of the peace, and he may not hold two offices that are
incompatible. Under the common law, one person cannot simultaneously hold two
incompatible offices, and the general rule is that the acceptance and qualification for a
second office incompatible with the first office is an implied resignation of the first office. (170) 
In determining incompatibility, the crucial question is whether the occupancy of both offices
by the same person is detrimental to the public interest or whether the performance of the
duties of one interferes with the performance of those of the other. (171)

 Assuming that an attorney pro tem assumes an "office," we fail to see how Garza's
appointment as attorney pro tem conflicts with his position as justice of the peace. We first
note that Garza is an attorney pro tem serving Willacy County, while he is a justice of the
peace in Cameron County. Second, relator has not demonstrated how Garza's fulfillment
of these two positions will be detrimental to the public interest or how the performance of
his duties as justice of the peace will interfere in any way with his duties as attorney pro
tem. Accordingly, this Court fails to see any error on the part of respondent on this basis.

c. Animosity, Bias, and Conflicting Interests

 Relator also argues that Garza was disqualified as an attorney pro tem because
Garza was "not independent, unbiased, without conflicts of interest," and he was a witness
to one of the concerns raised by the grand jury. According to relator, Garza has been
relator's "long time political opponent who has run against relator on four separate
occasions for the post of Willacy County District Attorney, and as late as the last election
for district attorney in 2004." (172) Relator further asserts that "there is a tremendous amount
of animosity between relator and Judge Gustavo Garza such that it has resulted in a
physical altercation between the two on at least one occasion." Relator also points out that
Garza was a candidate for district attorney in the same election in which, as attorney pro
tem, he was investigating relator for "voter fraud." Relator argues that Garza's service as
attorney pro tem raises questions about the integrity of the criminal process and creates
an appearance of impropriety. (173)

 The absence of an impartial and disinterested prosecutor has been held to violate
a criminal defendant's due process right to a fundamentally fair trial. (174) Put another way,
the due process rights of a criminal defendant are violated when a prosecuting attorney
who has a conflict of interest relevant to the defendant's case prosecutes the defendant. 
It is clear; however, that the trial court may not disqualify a district attorney or his staff on
the basis of a conflict of interest that does not rise to the level of a due-process violation. (175)

 The question whether there is a conflict of interest is dependent upon the
circumstances of the individual case. Because there is no bright-line rule for determining
whether a conflict rises to the level of a due-process violation, each case must be analyzed
on the facts peculiar to it. As the United States Supreme Court has explained:

 Due process "is not a technical conception with a fixed content unrelated to
time, place and circumstances." Rather, the phrase expresses the
requirement of "fundamental fairness," a requirement whose meaning can
be as opaque as its importance is lofty. Applying the Due Process Clause is
therefore an uncertain enterprise [that] must discover what "fundamental
fairness" consists of in a particular situation by first considering any relevant
precedents and then by assessing the several interests that are at stake. (176)


The burden is on the party seeking disqualification of the prosecutor to present evidence
establishing the existence of disqualifying bias or prejudice. (177) Mere allegations of
wrongdoing will not suffice. (178)

 The issue of what constitutes an "impartial" prosecutor requires explanation. A
prosecutor is not "partial" simply because he zealously seeks a conviction. Rather,
"partiality" in this context is similar to a conflict of interest in the sense that the prosecutor
has a personal interest or stake in the outcome of the criminal prosecution. Thus,
"partiality" refers not to personal zeal but to a situation where the personal interests of the
prosecutor generate a structural conflict of interest. (179) That is to say, a prosecutor's
personal interest or partiality may present "an actual conflict of interest if its potential for
misconduct is deemed intolerable." (180)

 In this regard, we would note that courts have observed that "the zeal of the
prosecutor who covets higher office or who has a personal political axe to grind may well
exceed the zeal of" a prosecutor who has more limited ambitions. (181) Nevertheless, a
prosecutor's political ambitions alone are not enough to support a finding that a prosecutor
is not sufficiently disinterested. (182) Furthermore, Texas case law clearly shows that a mere
potential or perceived conflict of interest is not sufficient to warrant disqualification. (183) We
do not lightly disrupt the orderly prosecution of those who have committed crimes against
the State and her citizens. 

 A prosecutor's "primary duty" is "not to convict, but to see that justice is done." (184) 
In this regard, any interest that is inconsistent with the prosecutor's duty to see that justice
is done is a conflict that could potentially violate a defendant's right to fundamental
fairness. For example, if a prosecutor has a financial stake in the outcome of a
prosecution, the conflict between that interest and the duties of the public office clearly
presents constitutional concerns. (185) Additionally, a prosecutor's potential access to or use
of confidential information obtained through prior representation of the defendant could
undermine the fairness of the prosecution. (186) Moreover, a conflict arising from a
prosecutor's non-economic, personal interest in the case can violate a defendant's right
to due process. (187) For example, certain violations of the election code can give rise to
causes of action for monetary damages to the opposing candidate in a race. (188)

 In this context, relator's complaints that it was improper to appoint Garza to
investigate voter fraud in an election which he lost are of significant concern. Garza knew,
when he drafted the order appointing himself as attorney pro tem, that one of the
allegations against relator involved election fraud, specifically "voter fraud committed by
the District Attorney, Juan Angel Guerra during the election of March 2004." Garza was
relator's opponent in that election. Accordingly, there is a potential conflict between
Garza's direct personal interest in the results of the criminal investigation of these charges
and Garza's duty to see that justice is done. A prosecutor should not be subject to
influences that undermine confidence that the prosecution can be conducted in a
disinterested fashion. We cannot have confidence in a proceeding in which an interested
prosecutor plays the critical role of preparing and presenting the case for the defendant's
guilt. We believe, under these circumstances, relator has been or will be prejudiced by this
conflict, and such conflict rises to the level of a due process violation. 

d. Prosecutor Serving as a Witness

 Relator contends that Garza's status as a candidate in the election in which relator
is accused of voter fraud "makes [relator] a witness." In determining whether counsel
should be disqualified because counsel is a potential witness, Texas courts use rule 3.08
of the Texas disciplinary rules of professional conduct as a guideline. (189) The rule does not
present the disqualification standard, but does provide considerations relevant to the
determination. (190) 

 Counsel may be disqualified under the disciplinary rules when the opposing party
can demonstrate actual prejudice resulting from opposing counsel's service in the dual role
of advocate-witness. (191) Allegations of one or more violations of the disciplinary rules or
evidence showing only a possible future violation are not sufficient. (192) Moreover, the party
seeking disqualification cannot invite the necessary actual prejudice by unnecessarily
calling the opposing counsel as a witness. (193)

 Although mere allegations of a possible future violation of a disciplinary rule are not
sufficient for the purposes of disqualification; the issue of disqualification can be
determined early in the trial process despite the fact that "some speculation is involved." (194) 
Considering the issue of disqualification early in the trial process can avoid actual prejudice
resulting from the opponent's service in dual roles and prevent a situation in which the
opponent would experience substantial hardship if counsel were disqualified. (195) In such
instances, however, the speculation cannot be unsupported or dubious. (196) 

 We agree that Garza could be a material fact witness, if not the actual complainant,
regarding the allegations under investigation. In the instant case, we perceive a very real
probability that Garza would be called upon to testify regarding the alleged election fraud. 
Garza could be a material fact witness, and would be in fact the injured party if the
allegations of election fraud were substantiated. If Garza were to testify, the confusion that
would most likely result from Garza's multiple roles as prosecutor, witness, and interested
party would substantially affect the jury's verdict. (197)

e. Conclusion

 For the above reasons described in subsections "IX.c" and "IX.d" herein, under the
facts of this case, we hold that respondent abused her discretion in appointing Garza as
attorney pro tem. (198)
 Accordingly, we will conditionally issue mandamus relief with respect
to relator's fourth issue. 

X. Contempt and Sanctions


1. Motion for Contempt

 Contempt of court is broadly defined as disobedience to or disrespect of a court by
acting in opposition to its authority. (199) Within this definition, there are two types of
contempt: direct contempt and constructive contempt. (200) Direct contempt is that type of
disobedience or disrespect which occurs within the presence of the court, while
constructive contempt occurs outside the court's presence. The contempt alleged in this
case, violation of a written court order, outside the presence of the court, is constructive
contempt. A finding of contempt for disobedience to a court order requires proof beyond
a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3)
the willful intent to violate the order. (201)

 Relator filed an unverified motion for contempt with this Court, (202) alleging that
respondent and Garza had violated this Court's March 15 stay order--which stayed the
January 17 order appointing Garza as attorney pro tem--by meeting with the grand jury
on March 21 for the purpose of handing down indictments against relator. This Court was
mindful of the seriousness of charging a sitting judge with contempt. A judge's "refusal to
obey the direct order of a superior court threatens the very integrity and continued validity
of the State judicial system." (203) Accordingly, we scheduled a show cause hearing to
ascertain the validity of relator's allegation. (204)

 Prior to the show cause hearing, respondent and Garza filed motions to dismiss
relator's motion for contempt. Respondent's motion asserts that she "did not direct the
Grand Jury of Willacy County to meet on March 21, 2007 and issue true bills against
Relator." Garza, in his motion, similarly asserts that he "did not directly or indirectly
recommend, request or direct the [grand jury] to meet on March 21, 2007 and/or to issue
indictments against [relator]." Their assertions were later supported at the show cause
hearing through their own testimony, as well as the testimony of the grand jury
foreperson. (205) No contradictory testimony or evidence was presented. Therefore, because
the evidence before us does not show beyond a reasonable doubt that respondent and
Garza violated the stay order by meeting with the grand jury on March 21, 2007, we do not
find respondent or Garza in contempt of this Court. (206)

2. Motions for Sanctions

 Respondent and Garza have each requested that this Court sanction relator for the
filing of his motion for contempt. Rule 52.11 of the Texas Rules of Appellate Procedure
states:

 On motion of any party or on its own initiative, the court may--after notice
and a reasonable opportunity to respond--impose just sanctions on a party
or attorney who is not acting in good faith as indicated by any of the
following:

 

 (a) filing a petition that is clearly groundless;

 

 (b) bringing the petition solely for delay of an underlying proceeding;

 

 (c) grossly misstating or omitting an obviously important and material fact in
the petition or response; or

 

 (d) filing an appendix or record that is clearly misleading because of the
omission of obviously important and material evidence or documents. (207)


In the instant case, respondent and Garza seemingly assert that relator should be
sanctioned for "grossly misstating" that they were with the grand jury on March 21--"an
obviously important and material fact." 

 Though the evidence at the show cause hearing failed to support relator's allegation,
it also failed to show that relator had not acted in good faith. A lack of good faith would be
more evident if the evidence indicated that relator knew that his allegation was false and
failed to take appropriate measures to apprise the Court of that fact. However, relator's
counsel asserted at the hearing that he and relator did not learn that the allegation was
called into question until respondent and Garza filed responses to the motion for contempt
a day before the show cause hearing was scheduled to commence. Therefore, after
carefully considering respondent and Garza's motions for sanctions, we find that both
motions should be denied.

3. Costs


 The Court incurred extraordinary costs of $2,210.90 and $1,016.20 in developing
the evidentiary record necessary to resolve the foregoing motion for contempt and motions
for sanctions. Given our disposition of the motion for contempt and motions for sanctions,
the Court hereby assesses these costs against relator and Garza equally. We order these
parties to pay such costs directly to this Court within thirty days of the date of this opinion. 
The Clerk of the Court is directed to forward the bills underlying these costs to the parties
upon request. 

XI. Conclusion

 Issues one through five are overruled. We conditionally grant mandamus relief to
vacate the improper past appointment of Garza as attorney pro tem due to Garza's conflict
of interest in serving as attorney pro tem and the probability that Garza would have been
a witness against relator had he been prosecuted for "voter fraud." The writ will issue only
if the trial court fails to act in accordance with this opinion. Any pending motions filed in
this cause and not specifically addressed herein are dismissed as moot.

 In so ruling, we do not address any related issues regarding the future development
of this case, or what actions will be appropriate in light of Garza's removal as attorney pro
tem. Such matters shall be presented to Judge Bañales for his consideration and ruling
as an initial prerequisite for our further review, if any is indeed necessary.






 

 LINDA REYNA YAÑEZ,

 Justice






Dissenting opinion by

Justice Gina M. Benavides


Opinion delivered and filed this the

21st day of September, 2007.

1. The July Term grand jury was a "holdover" grand jury. See Tex. Code Crim. Proc. Ann. art. 19.07
(Vernon 2005).
2. The warrant permitted the search and seizure of "all the computers, hard drives, flash drives, floppy
discs, and any other computer device that will store information electronically." It further allowed for the
seizure of "all financial records, all receipt books and any and all record books of seized property and records
of expenditures of forfeited funds, including files, tapes, videos, recordings kept and contained within the
Willacy County District Attorney's Office."
3. See Tex. Penal Code Ann. § 31.03 (Vernon Supp. 2006).
4. Despite the petition's title, relator's petition does not argue or pray for a writ of injunction. Instead,
relator prays for the same general relief that he later sets out in his amended petition, which is outlined below
and construed by this Court as a writ of mandamus. See In re Estate of Head, 165 S.W.3d 897, 902 (Tex.
App.-Texarkana 2005, no pet.) (holding that courts "are to construe a party's pleadings liberally rather than
limit the function of those pleadings according to the mere titles they are given").
5. See Tex. R. App. P. 52.10.
6. Relator was indicted for the following offenses: first degree felony theft, attempted theft, tampering
with governmental records, perjury, and abuse of official capacity. See Tex. Penal Code Ann. §§ 15.01(a), 
31.03(e)(7), 31.03(e)(4), 37.02, 37.10, 39.02 (Vernon 2003 & Supp. 2006).
7. We notified respondent and Garza that they had the right to representation by counsel at this hearing
if they so desired. We ordered the relator, respondent, and Garza to file any affidavits necessary to support
any facts upon which they planned to rely at the hearing to prove, deny, or excuse the alleged contempt. We
further ordered that any other party to this proceeding should also file any affidavits necessary to show any
relevant facts by this same date. The proceedings were recorded by a certified court reporter.
8. If any of the issues raised in this original proceeding have been presented to Judge Bañales for him
to act upon as a threshold matter, the appellate record is entirely silent in that regard. The record does show,
however, that Judge Bañales declined to void the January 17 order upon recusing respondent. We believe
that his refusal to do so was appropriate. See Rio Grande Valley Gas Co. v. City of Pharr, 962 S.W.2d 631,
637-38 (Tex. App.-Corpus Christi 1997, pet. dism'd w.o.j.). 
9. For purposes of organization, relator's issues have been reordered and will be referred to
numerically as herein sequenced.
10. Camarena v. Texas Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988).
11. See id.
12. Freeman v. Burrows, 141 Tex. 318, 171 S.W.2d 863, 863 (1943).
13. Tex. R. Civ. P. 7.2(b).
14. Id.
15. See id. 7.2(a).
16. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).
17. Urbish v. 127th Judicial Dist. Court, 708 S.W.2d 429, 431 (Tex. 1986) (orig. proceeding).
18. Walker, 827 S.W.2d at 839.
19. Id.
20. Id.
21. Id.
22. Id.
23. Id.
24. Id.
25. Huie v. DeShazo, 922 S.W.2d 920, 928 (Tex. 1996) (orig. proceeding).
26. Id.
27. See Walker, 827 S.W.2d at 840.
28. Id.
29. Id.
30. Id.
31. See CSR Ltd. v. Link, 925 S.W.2d 591, 596 (Tex. 1996); Walker, 827 S.W.2d at 842.
32. State ex rel. Eidson v. Edwards, 793 S.W.2d 1, 4 (Tex. Crim. App. 1990).
33. See Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon 2005) ("Each district attorney shall represent
the State in all criminal cases in the district courts in his district . . . ."); id. 20.03 ("The attorney representing
the State, is entitled to go before the grand jury and inform them of offenses liable to indictment . . . ."); id.
20.04 ("The attorney representing the State may examine the witnesses before the grand jury and shall advise
as to the proper mode of interrogating them."); id. 20.20 ("The attorney representing the State shall prepare
all indictments . . . .").
34. See Terrell v. Greene, 88 Tex. 539, 31 S.W. 631, 635 (1895) ("In the case of public officers the
general rule is, that where a person holds an uncontested title to an office, mandamus may be issued to put
him in possession; or where he has an undisputed right to exercise the functions of an office, and having
actual and undisputed possession, he is illegally ousted or suspended from the performance of its duties, he
may be restored to his rights as such officer by a writ of mandamus."); see also State ex rel. Hill v. Pirtle, 887
S.W.2d 921, 926 (Tex. Crim. App. 1994) (mandamus remedy was available to district attorney to vacate
district judge's order prohibiting two assistant attorneys general from serving as assistant district attorneys;
no other legal mechanism short of mandamus would have allowed district attorney to challenge trial court's
order and district attorney had clear legal right to have district judge vacate the order); State ex rel. Eidson,
793 S.W.2d 1, 5 (Tex. Crim. App. 1990) (mandamus relief was available to challenge order removing district
attorney from case). The intermediate appellate courts have likewise exercised mandamus jurisdiction over
such situations. See In re State ex rel. Rodriguez, 166 S.W.3d 894, 897 (Tex. App.-El Paso 2005, orig.
proceeding) ("[I]t has long been the law in Texas that mandamus relief is available to restore the rights of
office to an official who has been illegally ousted or suspended from the performance of his duties . . .
mandamus relief has been available to prosecutors who have been prohibited from representing the State
in criminal cases."); see also In re Reed, 137 S.W.3d 676, 677 (Tex. App.-San Antonio 2004, orig.
proceeding) (conditionally granting mandamus relief where district attorney sought to vacate an order recusing
the district attorney's office from prosecuting a case); see also State ex rel. Hilbig v. McDonald, 877 S.W.2d
469, 469-70 (Tex. App.-San Antonio 1994, orig. proceeding) (conditionally granting mandamus relief where
district attorney sought to vacate an order recusing the entire district attorney's office). Cf. In re Goodman,
210 S.W.3d 805, 807 (Tex. App.-Texarkana 2006, orig. proceeding) (conditionally granting mandamus relief
requiring disqualification of a county attorney). 
35. Tex. Const. art. XV, § 7.
36. Meyer v. Tunks, 360 S.W.2d 518, 520 (Tex. 1962).
37. See id.
38. Tex. Loc. Gov't Code Ann. §§ 87.012-.013 (Vernon 1999).
39. Id. at § 87.015(a).
40. Id. at § 87.015(b).
41. Id. at § 87.015(c).
42. Id. at § 87.016(a).
43. Id. at § 87.016(c).
44. Id.
45. Id. at § 87.016(d).
46. Id. at § 87.017(a).
47. Id. at § 87.018(a).
48. Id. at § 87.018(f).
49. E.g., relator may be removed from office as a result of being convicted of a charge emanating from
the indictments drafted by Garza. See Tex. Loc. Gov't Code Ann. § 87.031 (Vernon 1999).
50. One could arguably assert that, under a strained interpretation of the court of criminal appeals'
opinion in Eidson v. Edwards, 793 S.W.2d 1 (Tex. Crim. App. 1990), the order's removal of respondent from
a criminal investigation, albeit one directed at himself, is analogous to a removal from office. Id. at 4-5. We
note, however, that Eidson was a plurality opinion. While four justices endorsed the proposition that removal
of a district attorney from a particular case is tantamount to removing the district attorney from his elected
office, five justices explicitly rejected this proposition in their concurring and dissenting opinions. Accordingly,
the aforementioned proposition is of limited or no precedential value, although we may look to plurality
opinions for their persuasive value. Compare Cooper v. State, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002)
(holding a plurality opinion has limited or no precedential value); Vernon v. State, 841 S.W.2d 407, 410 (Tex.
Crim. App. 1992) (noting that a plurality opinion does not have "significant precedential value"); with State v.
Hardy, 963 S.W.2d 516, 519 (Tex. Crim. App. 1997) ("we may look to 'plurality' opinions for their persuasive
value"). 
51. Tex. Loc. Gov't Code Ann. § 87.031(a) (Vernon 1999).
52. Id. at § 87.031(b) ("The court rendering judgment in such a case shall include an order removing
the officer in the judgment.").
53. Meyer, 360 S.W.2d at 520 (emphasis added).
54. "'The attorney representing the State' means the Attorney General, district attorney, criminal district
attorney, or county attorney." Tex. Code Crim. Proc. Ann. art. 20.03 (Vernon 2005).
55. The Legislature has enacted several provisions in the code of criminal procedure dealing with the
office of district attorney and its interactions with the grand jury process. Under some of these provisions, a
district attorney (1) "is entitled to go before the grand jury and inform them of offenses liable to indictment at
any time except when they are discussing the propriety of finding an indictment or voting upon the same," (2)
"may examine the witnesses before the grand jury and . . . advise as to the proper mode of interrogating
them," and (3) "shall prepare all indictments which have been found, with as little delay as possible, and
deliver them to the foreman." Tex. Code Crim. Proc. Ann. arts. 20.03, 20.04, 20.20 (Vernon 2005). 
Additional provisions permit the district attorney to participate further at the grand jury's discretion. Under
these provisions, (1) a "grand jury may send for the attorney representing the state and ask his advice upon
any matter of law or upon any question arising respecting the proper discharge of their duties," (2) the district
attorney may issue a summons or attachment for any witness in the county; and (3) the district attorney may
cause a subpoena or attachment to be issued on a witness who may provide material testimony. Id. at arts.
20.05, 20.10, 20.11.
56. See infra note 62. The Colorado Supreme Court, in addressing the notion of a district attorney
assisting a grand jury that is charged with the duty of investigating his office, has stated:


 The district attorney is the legal adviser of the grand jury; it is his duty to appear before and
advise them from the evidence what charges to make; what testimony is material, relevant
and sufficient, and what is not; and if, prior to his presentment, no one can be substituted in
his place and stead to manage an investigation in which, from the charge of the court, he is
directly or indirectly implicated, it would be within his power to thwart the administration of
justice by preventing the preliminary steps being taken necessary to the finding of an
indictment.


People ex. rel. Lindsley v. Dist. Court, 66 P. 896, 898 (Colo. 1901). In light of the statutory provisions outlined
in the previous footnote, we believe the concerns raised by the Colorado Supreme Court in Lindsley are of
equal import in this state. 
57. State ex rel. Holmes v. Salinas, 784 S.W.2d 421, 426 (Tex. Crim. App. 1990).
58. Tex. Loc. Gov't Code Ann. § 87.016 (Vernon 1999).
59. Whittington v. State, 680 S.W.2d 505, 512 (Tex. App.-Tyler 1984, pet. ref'd).
60. Tex. Loc. Gov't Code Ann. § 87.015 (Vernon 1999).
61. Article 20.09 of the code of criminal procedure states that a "grand jury shall inquire into all offenses
liable to indictment of which any member may have knowledge, or of which they shall be informed by the
attorney representing the State, or any other credible person." Tex. Code Crim. Proc. Ann. art. 20.09 (Vernon
2005) (emphasis added). Nothing in this article suggests that a grand jury is precluded from inquiring into a
district attorney's criminal conduct, nor does it suggest that an evidentiary bar must be satisfied in order for
an inquiry to commence.
62. See Tex. Code Crim. Proc. Ann. art. 20.011 (Vernon 2005).
63. Id. at § 20.04.
64. Id. at § 20.06.
65. Id. at § 20.02.
66. See generally id. at § 19.07 (stating that a district judge may extend a grand jury's term for up to
ninety days to allow the grand jury to complete an ongoing investigation that was initiated during its original
term); Flournoy, et al. v. State, 187 S.W.3d 621, 624 (Tex. App.-Houston [14th Dist.] 2006, no pet.).
67. State v. Rosenbaum, 852 S.W.2d 525, 529 (Tex. Crim. App. 1993) (Clinton, J., concurring).
68. Id.
69. This Court's ability to decipher an order's intent should not minimize the importance of a trial court
carefully wording the order appointing an attorney pro tem and the constitutional oath, so as to distinguish
between an "attorney pro tem" and a "special prosecutor." See Stephens v. State, 978 S.W.2d 728, 731 (Tex.
App.-Austin 1998, pet. ref'd).
70. See Tex. Code Crim. Proc. Ann. art. 2.07(a) (Vernon 2005).
71. Id. at art. 2.07(b-1).
72. Eidson, 793 S.W.2d at 6. This holding has been followed by numerous courts of appeals. See,
e.g., Gonzalez v. State, 115 S.W.3d 278, 286 (Tex. App.-Corpus Christi 2003, pet. ref'd); Fluellen v. State,
104 S.W.3d 152, 161 (Tex. App.-Texarkana 2003, no pet.).
73. See In re Goodman, 210 S.W.3d 805, 815 (Tex. App.-Texarkana 2006, orig. proceeding); State
ex rel. Hilbig v. McDonald, 877 S.W.2d 469, 470 (Tex. App.-San Antonio 1994, no pet.).
74. See Johnson v. State, 169 S.W.3d 223, 229 (Tex. Crim. App. 2005) ("A prosecutor's refusal to
recuse himself from a case cannot be corrected because the trial court has no authority to force a recusal.").
75. Hill, 887 S.W.2d at 927.
76. Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon 2005).
77. Hill, 887 S.W.2d at 927.
78. Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon 2005).
79. Eidson, 793 S.W.2d at 6 (citations omitted).
80. Id.
81. See generally Northcutt v. Howard, 130 S.W.2d 70 (Ky. 1939).
82. Id. at 71.
83. Id. at 71-72 (emphasis added).
84. See generally Commonwealth v. McHale, 97 Pa. 397 (1881).
85. Id. at 406.
86. Id. (emphasis added).
87. Lattimore v. Vernor, 288 P. 463 (Okla. 1930).
88. Id. at 463.
89. Id. at 464.
90. Id. Section 5745 of the Oklahoma statutes provided that: "The district court, whenever there shall
be no county attorney for the county, or when the county attorney shall be absent from the court, or unable
to attend to his duties, or disqualified to act, may appoint, by an order to be entered in the minutes of the court,
some suitable person to perform for the time being the duties required by law to be performed by the county
attorney, and the person so appointed shall thereupon be vested with all the powers of such county attorney
for that purpose." See Okla. Comp. Stat. § 5745 (1921), as discussed in Lattimore. 
91. Id.
92. Weems v. Anderson, 516 S.W.2d 895, 898 (Ark. 1974). In Weems, the supreme court stated:


 Since prosecuting attorneys and other State officials may be indicted and tried for
alleged criminal activities whether there is an impeachment or not, there must be some way
within the framework of our State's legal system for the prosecuting attorney to be indicted
and tried even when the alleged crime occurs within the same judicial district in which he is
elected the prosecuting attorney. . . .


 . . . .


 The absence of specific statutory authority for the appointment of a special
prosecuting attorney under the circumstances of this case does not mean that the court is
without authority to do what justice, reason and common sense dictate must be done. In
other jurisdictions where there was the same lack of statutory authority for the appointment
of a special prosecuting attorney under circumstances such as those here presented, the
courts have held that there is an inherent power in the courts to make such an appointment.
We hold that the Arkansas Circuit Courts also have such inherent power.


Id.
93. State ex rel. Thomas v. Henderson, 175 N.E. 865, 866-67 (Ohio 1931) (recognizing the inherent
power of a court--despite "[t]here being no definite specific statutory provision for a finding of the temporary
disqualification of the prosecuting attorney,"--to appoint an attorney to assist a grand jury "by reason of the
prosecutor himself being under investigation," thus making "it impossible that either he or any assistant under
his direction should act").
94. Lindsley, 66 P. at 898-99. The Colorado Supreme Court stated:


 If, from any source which he deems sufficiently reliable to prompt him to act, the judge
obtains information implicating the district attorney in any alleged offense which he has called
to the attention of the grand jury, and acting on such information, directs that body to
investigate the district attorney with respect to such offense, such action ipso facto
disqualifies the district attorney from acting in such matters; and the judge so doing, charged
as he is with the responsibility of not knowingly permitting the channels of justice to become
obstructed, has the undoubted authority, and it would be his bounden duty, to appoint an
attorney to act in the place and stead of the district attorney with respect to such matters. 
The district court has the inherent power to protect itself, and direct investigations in a
manner which will render them thorough and impartial. Reason dictates and simple justice
demands that no official or individual can take part in an investigation before a grand jury the
result of which may affect him, either directly or indirectly.


Id. (citations omitted).
95. State ex rel. Spencer v. Criminal Court of Marion County, 15 N.E.2d 1020, 1022 (Ind. 1938)
(discussing a court's inherent power and noting that "[i]t cannot be doubted that, where it is established that
the prosecuting attorney is an interested party . . . the court may appoint an attorney to represent the interests
of the state"). 
96. Sloane v. Hammond, 254 P. 648, 655 (Cal. Ct. App. 1927). The California court of appeals stated:


 The law is well settled, upon just considerations of public policy, as we have seen,
that courts possess the inherent power to name special counsel to act in the place of
disqualified public prosecutors. . . . Several of the cases to which we have pointed above are
to the effect that the inherent power of the courts to appoint exists irrespective or
independent of statute. . . . It cannot be questioned that it is the duty of the legislature to
enact laws under which district attorneys shall be elected or appointed, and to make it the
general duty of the law-making body to provide for an adequate prosecution of those cases
in which district attorneys themselves are charged with crime, or in which those regular
prosecutors are disqualified for some other reason.


Id.
97. State v. Gonzales, 26 Tex. 197, 199, 1862 Tex. LEXIS 6, *3-*4 (1862) (emphasis added).
98. Tex. Code Crim. Proc. Ann. art. 2.07 (Vernon 2005).
99. We observe that while a judge--when faced with a situation resembling respondent's--may be
obligated to appoint an attorney pro tem to assist the grand jury's investigation, the judge is in no way a slave
to that investigation. As noted by the court of criminal appeals in Ex Parte Edone:


 the court also exerts some "control" or supervision over the grand jury under [article 20.15
of the code of criminal procedure]. The court decides if the question propounded before the
grand jury is proper, and, thus, decides whether or not to aid the investigation of the grand
jury by then compelling an answer. Without the action of the court the grand jury is
powerless to enforce its investigative duty to gain testimony from a witness and decide on the
presentment of an indictment. In this sense, the court acts independently and in a
supervisory role (deciding whether to compel an answer) . . . .


Ex Parte Edone, 740 S.W.2d 446, 448 (Tex. Crim. App. 1987).
100. Tex. Code Crim. Proc. Ann. art. 2.07(a), (b-1) (Vernon 2005).
101. State v. Johnson, 821 S.W.2d 609, 612 (Tex. Crim. App. 1991).
102. Id. at 612 (footnotes omitted) (emphasis added).
103.  See Tex. Code Crim. Proc. Ann. art. 20.09 (Vernon 2005); Op. Tex. Att'y Gen. No. M-1171 at *4
(1972).
104. State ex rel. Matko v. Ziegler, 179 S.E.2d 735 (W. Va. 1971), overruled on other grounds by Smoot
v. Dingess, 236 S.E.2d 468, 472 (W. Va. 1977).
105. Id. at 737-38.
106. Id. at 742 (emphasis added).
107. Id.
108. State ex rel. Preissler v. Dostert, 260 S.E.2d 279, 286-87 (W. Va. 1979).
109. Id. at 281.
110. Id. at 285.
111. Id. at 285 n.8.
112. Id. at 285.
113. Id. at 286-87.
114. Id. at 287.
115. State ex rel. Ilvedson v. District Court, 291 N.W. 620 (N.D. 1940).
116. Id. at 622.
117. Id.
118. Id.
119. Id. at 623-24.
120. Id. at 627 (citations omitted).
121. Lattimore, 288 P. at 464-65.
122. State ex rel. Thomas, 175 N.E. at 867.
123. State ex rel. Preissler, 260 S.E.2d at 287; State ex rel. Ilvedson, 291 N.W. at 622.
124. Preissler, 260 S.E.2d at 287.
125. See Holmes, 784 S.W.2d at 426 ("There is no provision requiring or even allowing a magistrate
to restrict the process by which a legally constituted grand jury considers cases . . . .").
126. Supra note 68.
127. Preissler, 260 S.E.2d at 286.
128. State ex rel. Brown v. Merrifield, 389 S.E.2d 484, 486 (W. Va. 1990) (first emphasis in original,
second emphasis added).
129. Preissler, 260 S.E.2d at 285.
130. See Tex. Const. art. V, § 24.
131. Hill, 887 S.W.2d at 927. 
132. Tex. Code Crim. Proc. Ann. art. 2.07(b-1) (Vernon 2005).
133. We note that affording a right to notice and a hearing benefits not only the district attorney, but the
public as well:


 [T]he prosecuting attorney is elected by the people of the county to represent them in
prosecutions against criminal offenders. Consequently, the public has a right to know why
the attorney they have selected to represent them and whose salary they pay with their taxes,
is unfit to prosecute a given case. . . . The court must provide every safeguard to insure the
public that the business of the State is being properly conducted. A hearing on the record
provides the public with an accurate record of the actions of their elected officials, upon which
they may evaluate his performance.


Preissler, 260 S.E.2d at 287.
134. Griner v. Thomas, 101 Tex. 36, 104 S.W. 1058, 1058 (1907).
135. Id. at 1060.
136. Id.
137. Tex. Loc. Gov't Code Ann. § 87.017(a) (Vernon 1999).
138. Id.
139. Id. at § 87.017(b).
140. The idea that an office is accepted cum onere was also reflected in Trigg v. State, 49 Tex. 645,
669 (1878). Trigg, an elected county attorney, appealed to the supreme court after he was removed from
office upon being found guilty of habitual drunkenness and official misconduct. In discussing the
constitutionality of Trigg's removal, the supreme court commented:


 The office being elective, the qualified voters of the county have, by his election, declared in
favor of his fitness for the office in those respects; but the people of the whole State have
declared, by this provision of the Constitution, that he is disqualified from holding the office,
notwithstanding his election, if he is found, by the means thus provided, to be guilty of
habitual drunkeness. His right to the franchise is thus made subject to that limitation; and the
term of his office is thus subjected to a shorter period than the two years for which he was
elected. He received the office subject to its being terminated, and his place being filled by
another person, in the mode pointed out by the Constitution.


Id. While implicit in Trigg and Griner, the supreme court did explicitly express this idea in Sparks v. State, 42
Tex. Crim. 374, 60 S.W. 246, 247 (1900) ("The sheriff, when he undertook the duties of the office, assumed
them voluntarily and cum onere.").
141. Preissler, 260 S.E.2d at 286.
142. See Holmes, 784 S.W.2d at 426 ("There is no provision requiring or even allowing a magistrate
to restrict the process by which a legally constituted grand jury considers cases . . . .").
143. See Tex. Code Crim. Proc. Ann. art. 20.10 (Vernon 2005) (stating that the grand jury foreman may
issue a summons for any witness in the county, requiring the witness to appear).
144. See Rogers v. State, 774 S.W.2d 247, 262 (Tex. Crim. App. 1989), overruled on other grounds
by Peek v. State, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003) (stating that "the law does not entitle the subject
of a criminal investigation to appear personally or by legal counsel before the grand jury conducting such
investigation").
145. In United States v. Proctor & Gamble Co., 356 U.S. 677 (1958), the United States Supreme Court
listed the following reasons for grand jury secrecy:


 (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the
utmost freedom to the grand jury in its deliberations, and to prevent persons subject to
indictment or their friends from importuning the grand jurors; (3) to prevent subornation of
perjury or tampering with the witnesses who may testify before grand jury and later appear
at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by
persons who have information with respect to the commission of crimes; (5) to protect
innocent accused who is exonerated from disclosure of the fact that he has been under
investigation, and from the expense of standing trial where there was no probability of guilt.


Id. at 681 n.6.
146. We acknowledge that there is debate among the parties as to whether relator is actually being
denied the return of the items seized. Garza asserts that attempts have been made to returns items to relator,
but that he has refused to accept the items.
147. Poe v. State, 72 Tex. 625, 10 S.W. 737 (1889).
148. Id. at 738.
149. Id. at 738-39.
150. Id. at 740.
151. Shea v. State, 167 S.W.3d 98, 101-02 (Tex. App.-Waco 2005, pet. ref'd); cf. Loshe v. State, 160
Tex. Crim. 561, 566, 272 S.W.2d 517, 520 (1954) (op. on reh'g) (applying abuse of discretion standard to
review appearance of "volunteer" special prosecutor).
152. Tex. Code Crim. Proc. Ann. art. 2.07(a) (Vernon 2005) (emphasis added).
153. See Shea v. State, 167 S.W.3d 98, 101 (Tex. App.-Waco 2005, pet. ref'd).
154. Tex. Code Crim. Proc. Ann. art. 2.07(a) (Vernon 2005).
155. See Shea, 167 S.W.3d at 101.
156. Id.
157. Id.
158. Id. at 102.
159. U.S. Const. amend. VI.
160. Tex. Tax Code Ann. § 6.30(c) (Vernon 2001) ("The governing body of a taxing unit may contract
with any competent attorney to represent the unit to enforce the collection of delinquent taxes.") (emphasis
added).
161. Tex. R. Govern. Bar Adm'n XIII(b)(2)(D) (2006) (West 2007) ("[A] foreign nation attorney who has
not completed the law study under these Rules is eligible for an exemption from the law study requirement . . .
if the attorney demonstrates to the Board that the law of such foreign nation is sufficiently comparable to the
law of Texas that, in the judgment of the Board, it enables the foreign attorney to become a competent
attorney in Texas without additional formal legal education . . . .") (emphasis added).
162. See, e.g., Scarborough, 54 S.W.3d at 424-25
163. See Young v. U.S. ex rel. Vuitton Et Fils S.A., 481 U.S. 787, 804 (1987); Crowe v. Smith, 151 F.3d
217, 227 (5th Cir. 1998); Pirtle, 887 S.W.2d at 944 (dissenting opinion by Baird, J.). 
164. Op. Tex. Att'y Gen. No. GA-0241 (2004).
165. Tex. Code Crim. Proc. Ann. art. 2.08 (Vernon 2005) ("District and county attorneys shall not be
of counsel adversely to the State in any case, in any court, nor shall they, after they cease to be such officers,
be of counsel adversely to the State in any case in which they have been of counsel for the State.").
166. Ex parte Ramsey, 642 S.W.2d 483, 484 (Tex. Crim. App. 1982).
167. Op. Tex. Att'y Gen. No. GA-0241 at *10-11 (2004) (citations omitted).
168. Tex. Code Crim. Proc. Ann. art. 2.07(a) (Vernon 2005) (emphasis added).
169. "The relator must establish that the trial court could reasonably have reached only one decision. 
Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision
unless it is shown to be arbitrary and unreasonable." Walker, 827 S.W.2d at 839 (citations omitted).
170. Hill, 887 S.W.2d at 930.
171. Id.
172. We would note that the 1992 election for Willacy County Attorney, wherein Garza and Guerra were
opponents, resulted in an election contest which was appealed to this Court. See Guerra v. Garza, 865
S.W.2d 573 (Tex. App.-Corpus Christi 1993, writ dism'd w.o.j.). In that case, Guerra, the Democratic Party
nominee, sued Garza, a write-in candidate, contesting the canvass results of the general election which
declared Garza the winner. See id. at 574. Guerra alleged that Garza and his workers conspired to obtain
votes and defraud the voters of Willacy County by committing multiple violations of the Texas Election Code.
See id. After a bench trial, the trial court denied Guerra's contest and declared Garza the winner. Id. This
Court reversed the judgment and remanded the case to the trial court with instructions to open the ballot
boxes and recount the ballots in a manner consistent with our opinion. See id. at 579. 
173. Garza himself acknowledged the potential for an appearance of impropriety in his service as an
attorney pro tem in the instant case. Accordingly, Garza associated an assistant attorney pro tem to prosecute
the trial of any case against relator and planned not to participate in the trial himself. 
174. Ganger v. Peyton, 379 F.2d 709, 714 (4th Cir. 1967) (conviction violated fundamental fairness
assured by due process clause when part-time commonwealth attorney suffered impermissible conflict of
interest by prosecuting defendant for criminal assault while simultaneously representing defendant's wife in
divorce action). 
175. Pirtle, 887 S.W.2d at 927; Eidson, 793 S.W.2d at 6; Goodman, 210 S.W.3d at 808; Fluellen v.
State, 104 S.W.3d 152, 161 (Tex. App.-Texarkana 2003, no pet.).
176. Lassiter v. Dept. of Soc. Servs., 452 U.S. 18, 24-25 (1981) (quoting Cafeteria Workers v. McElroy,
367 U.S. 886, 895 (1961)). 
177. See Hill, 887 S.W.2d at 927; Reed, 503 S.W.2d at 776; Canady v. State, 100 S.W.3d 28, 32 (Tex.
App.-Waco 2002, no pet.). 
178. See Spears v. Fourth Court of Appeals, 797 S.W.2d at 656; State ex rel. Hilbig v. McDonald, 877
S.W.2d 469, 472 (Tex. App.-San Antonio 1994, no pet.). 
179. See Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 807-08 and n. 18 (1987); Polo
Fashions v. Stock Buyers Intern., 760 F.2d 698, 705 (6th Cir. 1985); New Jersey v. Imperiale, 773 F. Supp.
747, 750 (D.N.J. 1991). 
180. Young, 481 U.S. at 807 n.18. 
181. Dick v. Scroggy, 882 F.2d 192, 196 (6th Cir. 1989).
182. Id., Wright v. United States, 732 F.2d 1048, 1055 (2d Cir. 1984); Azzone v. United States, 341 F.2d
417, 419 (8th Cir. 1965).
183. See Hanley v. State, 921 S.W.2d 904, 909-10 (Tex. App.-Waco 1996, pet. ref'd) (holding that the
defendant could not disqualify the district attorney on the grounds that the prosecutor had a "prejudice" and
"predisposition" against him without proving that his allegations rose to the level of a due process violation);
Offermann v. State, 742 S.W.2d 875, 876 (Tex. App.-San Antonio, 1987, no writ) (holding that defendant
could not disqualify the district attorney on the grounds that the prosecutor harbored a "personal grudge"
against him because defendant failed to establish any harm as a result of the alleged "grudge").
184. Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon 2005). 
185. See, e.g., Ganger v. Peyton, 379 F.2d 709, 712-13 (4th Cir. 1967). 
186. See, e.g., Goodman, 210 S.W.3d at 810.
187. See Commonwealth v. Balenger, 704 A.2d 1385, 1386 (Pa. Super. 1997) (granting a new trial
where the prosecutor was involved in a romantic relationship with the defendant's wife), appeal denied 727
A.2d 126 (Pa. 1998). 
188. See, e.g., Osterberg v. Peca, 12 S.W.3d 31, 36 (Tex. 2000); Ragsdale v. Progressive Voters
League, 790 S.W.2d 77, 84 (Tex. App.-Dallas) ("The enforcement of this remedy is the essence of the statute
and promotes compliance with the provisions of the Code, especially those that proscribe certain acts as being
unlawful."), aff'd in part and rev'd in part on other grounds, 801 S.W.2d 880 (Tex. 1990). 
189. Tex. Disciplinary R. Prof'l Conduct 3.08; Gonzalez v. State, 117 S.W.3d 831, 838 (Tex. Crim.
App. 2003); House v. State, 947 S.W.2d 251, 252-53 (Tex. Crim. App. 1997). Rule 3.08 of the Texas
Disciplinary Rules of Professional Conduct provides, in part:


 (a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a
contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the
lawyer is or may be a witness necessary to establish an essential fact on behalf of the
lawyer's client, unless:


 (1) the testimony relates to an uncontested issue;


 (2) the testimony will relate solely to a matter of formality and there is no reason to believe
that substantial evidence will be offered in opposition to the testimony;


 (3) the testimony relates to the nature and value of legal services rendered in the case; 


 (4) the lawyer is a party to the action and is appearing pro se; or


 (5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the
matter and disqualification of the lawyer would work substantial hardship on the client.


 (b) A lawyer shall not continue as an advocate in a pending adjudicatory proceeding if the
lawyer believes that the lawyer will be compelled to furnish testimony that will be substantially
adverse to the lawyer's client, unless the client consents after full disclosure.

 
190. Gonzalez, 117 S.W.3d at 838.
191. Id.; House , 947 S.W.2d at 252; Brown v. State, 921 S.W.2d 227 (Tex. Crim. App. 1996).
192. Gonzalez, 117 S.W.3d at 838. 
193. See id.
194. See id. at 844.
195. See id.
196. Id.
197. See Tex. Disciplinary R. Prof'l Conduct 3.08, reprinted in Tex. Gov't Code Ann., tit. 2, subtit.
G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9); see Powers v. State, 165 S.W.3d 357, 358 (Tex.
Crim. App. 2005) ("an ethics rule may be relied upon to show that an alleged violation infringed the
complaining party's right to a fair trial or otherwise affecting substantial rights;" however, "a complaining party's
right is not grounded in the disciplinary rule itself."). 
198. The dissenting opinion contends that the competence or disqualification of Garza is a moot issue. 
The general rule is that a case becomes moot, and thus unreviewable, when it appears that one seeks to
obtain relief on some alleged controversy when in reality none exists, or on some matter which, when granted,
cannot have any practical legal effect on a then-existing controversy. See Tex. Dep't of Public Safety v.
LaFleur, 32 S.W.3d 911, 913-14 (Tex. App.-Texarkana 2000, no pet.). We do not agree that this issue is
moot. 


 We conclude that the "capable of repetition yet evading review" exception to the mootness doctrine
applies because the challenged act, that is, the appointment of an attorney pro tem, is of such short duration
that relator cannot obtain review before the issue becomes moot, and there is a reasonable expectation that
the same action will occur again if the issue is not considered. See Blum v. Lanier, 997 S.W.2d 259, 264
(Tex. 1999). 


 We further conclude that the "public interest" exception to the mootness doctrine also applies. This
is an issue of considerable public importance and the issue is capable of repetition between either the same
parties or other members of the public. See Ngo v. Ngo, 133 S.W.3d 688, 692 (Tex. App.-Corpus Christi
2003, no pet.). The Texas Supreme Court has not yet recognized the public interest exception to the
mootness doctrine and the intermediate appellate courts are not in unanimity regarding its availability, but this
Court has specifically recognized this exception, as have several of our sister courts. Ngo, 133 S.W.3d at
692; see FDIC v. Nueces County, 886 S.W.2d 766, 767 (Tex. 1994) ("This Court has not previously decided
the viability of the public interest exception, and we find it unnecessary to reach that issue here."); Houston
Chronicle Pub. Co. v. Thomas, 196 S.W.3d 396, 399-400 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (noting
split among courts regarding availability of the public interest exception); State ex rel. Cockerham v.
Cockerham, 218 S.W.3d 298, 302 (Tex. App.-Texarkana 2007, no pet.) (recognizing public interest exception
to the mootness doctrine); In re Guardianship of Keller, 171 S.W.3d 498, 501 (Tex. App.-Waco 2005), rev'd
on other grounds, Zipp v. Wuemling, 218 S.W.3d 71 (Tex. 2007) (same); Securtec, Inc. v. County of Gregg,
106 S.W.3d 803, 810-11 (Tex. App.-Texarkana 2003, pet. denied) (same); Univ. Interscholastic League v.
Buchanan, 848 S.W.2d 298, 304 (Tex. App.-Austin 1993, no pet.) (same).


 Finally, we would note that, on September 11, 2007, relator filed a "motion for contempt and/or motion
for mandamus and/or equitable relief or in the alternative, motion for stay," supported by affidavit, in which he
contends that respondent and Garza have been meeting privately with a new grand jury in relator's absence
and he "is concerned that without this Court of Appeals' intervention, with this new grand jury, under the
direction of [respondent] and the illegal participation of . . . Garza, Relator will once again find himself being
investigated, indicted and arrested." Accordingly, based on the record as a whole and this recent motion, we
conclude that the issues herein are vital and continuing in nature.

199. Ex parte Chambers, 898 S.W.2d 257, 259 (Tex. 1995).
200. Id.
201. Id.
202. Motions for contempt are typically verified; however, an unverified motion is acceptable unless a
relevant statute provides otherwise. See, e.g., Ex parte Winfree, 263 S.W.2d 154, 156-58 (Tex. 1953)
(verification not jurisdictional); see also Ex parte Hall, 611 S.W.2d 459, 460 (Tex. Civ. App.-Dallas 1980, orig.
proceeding) (instituting contempt proceeding on unsworn complaint does not violate due process).
203. In re Reed, 901 S.W.2d 604, 608 (Tex. App.-San Antonio 1995, orig. proceeding).
204. The court of appeals has the authority to conduct its own evidentiary hearing on a contempt
allegation or it may refer the matter of taking testimony and hearing evidence to a district court. In re Reed,
901 S.W.2d at 610 (citing Ex parte Werblud, 536 S.W.2d 542, 544-45 (Tex. 1976)). The supreme court
prefers the latter course of action. Id. In this case, however, because the alleged contemnor is a sitting judge,
there is no obviously appropriate district court to whom the case could have been referred. See id.
205. The grand jury foreperson testified that the grand jury decided, on its own initiative, to meet at the
Willacy County Sheriff's Office in the evening of March 21, 2007. On this day, the foreperson contacted the
official court reporter for the 197th Judicial District Court and arranged for the reporter to meet the grand jury
at the sheriff's office. According to the foreperson, only the court reporter and the twelve grand jurors were
present while proceedings were being conducted by the grand jury; these proceedings were under the sole
direction of the foreperson and the assistant foreperson. 
206. Because due process forbids the assessment of punishment for acts not brought to the alleged
contemnor's attention before the hearing, this Court's contempt inquiry is limited to the sole allegation raised
in relator's motion for contempt. Ex parte Swate, 922 S.W.2d 122, 124 (Tex. 1996); Ex parte Parr, 505
S.W.2d 242, 245-46 (Tex. 1974).
207. Tex. R. App. P. 52.11.